812 So.2d 822 (2002)
STATE of Louisiana
v.
Robert G. LOISEL.
No. 2001-K-2018.
Court of Appeal of Louisiana, Fourth Circuit.
March 6, 2002.
Writ Denied May 31, 2002.
Michael G. Fanning, Gretna, LA, for Defendant/Relator.
Richard Leyoub, Attorney General, Darryl W. Bubrig, Sr., District Attorney, 25th Judicial District, Parish of Plaquemines, Courthouse, Pointe-A-La-Hache, LA, and Gilbert V. Andry IV, Assistant District *823 Attorney, New Orleans, LA, for State of Louisiana.
Court composed of Chief Judge WILLIAM H. BYRNES, III, Judge MIRIAM G. WALTZER, and Judge DENNIS R. BAGNERIS, SR.
WILLIAM H. BYRNES, III, Chief Judge.
Defendant, Robert G. Loisel, requests a review of his conviction and sentence for driving while intoxicated. We reverse the conviction and vacate the sentence.

Statement of the Case
On February 22, 2000, Loisel was arrested for driving while intoxicated, a violation of La. R.S. 14:98. On July 27, 2001, the trial court found him guilty. On September 20, 2001, the trial court sentenced Loisel to sixty days in Parish Prison, suspended, and placed him on active probation with special conditions. Loisel's writ application followed,[1] and the trial court granted Loisel's motion for a stay. The application was supplemented with a videotape which had been introduced as evidence.

Facts
According to the writ application, there was no testimony taken at the "trial." Instead, the parties submitted the entire matter on the arresting police officer's report and the videotape that depicts Loisel at the scene of the arrest and at the sheriffs office during booking. According to the police report, on February 22, 2000, at approximately 8:30 p.m., Deputy Buras was patrolling in the Belle Chasse area when he passed through the intersection of La. 23 and La. 406. He observed a burgundy Buick sitting in the middle of the intersection. Deputy Buras turned around at La. 23 and G Street, then pulled up behind the Buick, which was still sitting in the intersection. The Buick, which was operated by Loisel, was blocking traffic entering La. 23 from E Street. Deputy Buras activated his lights and directed Loisel to pull over on the shoulder of La. 406.
The police report shows that, after stopping his car, Loisel lit a cigarette and put a mint in his mouth. While Deputy Buras was advising Loisel of the reason for the stop, the deputy was able to smell alcohol despite the cigarette and mint. For that reason, Deputy Buras asked Loisel to conduct the finger to nose test; Loisel refused. He then asked Loisel to conduct the "alphabet test." According to Deputy Buras's report, Loisel "failed" the test because, on the first try, he was supposed to recite the alphabet from D to Q, but Loisel went to S. When Loisel was asked to repeat D to Q, he recited D E Q R out of order. Loisel refused to perform the "walk and turn" test. When asked, Loisel agreed that he had been drinking and all that he wanted to do was pick his son up from soccer and go home.
The police report further reflects that Deputy Buras decided to have Loisel transported to lock-up because of the "extreme odor" of alcohol emanating from Loisel. At the lock-up, Loisel refused to blow in the Intoxilyzer 5000, causing the deputy to have Loisel booked for DWI and careless operation.
The DWI citation form prepared by Deputy Buras reflects that Loisel's car was stopped in the "middle of intersection waiting to turn" at the time of the stop. It states that Loisel's symptoms were a strong smell of alcoholic beverage and *824 slurred speech. The Uniform Field Sobriety Test form states that Deputy Buras could smell the odor of alcohol from three to four feet away. The deputy checked "obvious" under effects of alcohol, "unsure" under balance, "strong" under odor of alcoholic beverage, and "slurred" under speech. The form indicates that the deputy was not certified to conduct the horizontal gaze nystagmus test.
The second page of the Uniform Field Sobriety Test form indicates that Loisel was given his Miranda rights prior to questioning and that Loisel admitted drinking, but refused to state what he had been drinking. Loisel responded "very little" to the question of how much he had been drinking. He identified the place where he had been drinking as a bar in the Irish Channel. Just prior to the stop, Loisel had been at his home five minutes away; he was on the way to pick his son up from soccer practice at the time he was stopped.
The videotape depicts Loisel being asked to recite part of the alphabet. He had no apparent trouble the first time, but mixed up some letters and started over the second time. However, Loisel did not appear to have any trouble standing or walking. He retrieved papers from his car with no apparent problem. Loisel actually stood or paced in front of the police car for almost twenty minutes without once losing his balance or leaning against the car for support. As to his speech, it is difficult to tell if it is slurred because he is not very close to the police car. In contrast, it appears that the deputy is right next to the car most of the time, and thus the deputy's voice is relatively loud.
Early in the videotape, the deputy looks directly toward the camera, purportedly while speaking to Loisel, and announces that he suspects Loisel of driving while intoxicated because his speech was slurred and he smelled of alcohol. After the alphabet test and the refusal of Loisel to perform the finger to nose and walk and turn tests, the deputy began filling out paperwork for the arrest. Whenever the deputy asked Loisel a question, Loisel instinctively walked over to the side of the police car (outside the camera's range) so that he could speak directly to the deputy. Every time he did so, the deputy directed him back to the front of the police car. Although Loisel is generally moving when he is speaking, it is possible to understand everything Loisel says.
The second half of the videotape is taken from the booking office camera. Loisel is sitting in a chair throughout this portion of the videotape, and he remains alert. The videotape shows Loisel's refusal to take the breath test.

Insufficiency of Evidence
Loisel argues that the trial court erred when it failed to find that the videotape refuted the deputy's allegations in the police report that Loisel was intoxicated. He contends that the videotape clearly shows that his balance was quite good, not "unsure" as stated in the police report, and that the videotape does not confirm that his speech was slurred. Loisel further argues that the failure to stop at the right time during the alphabet test could have been simply a matter of nervousness, and that any problems the second time could have been a misunderstanding of the instructions or short-term memory loss due to age, a "senior moment." Loisel was stopped on his fifty-first birthdaya fact he mentions several times to the deputy. Loisel suggests that the original traffic violation, stopping in the intersection to turn and then getting stranded when the light changed, is not particularly indicative of driving while intoxicated. There was no testimony that Loisel was weaving, driving off the road, or otherwise losing control of *825 his car. Loisel argues that the evidence, including the videotape, was not sufficient to allow the court to find beyond a reasonable doubt that he was intoxicated.
The standard for reviewing a claim of insufficient evidence is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found all of the essential elements of the offense proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The reviewing court is to consider the record as a whole and not just evidence most favorable to the prosecution; and if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict should be upheld. State v. Mussall, 523 So.2d 1305 (La.1988).
Some behavioral manifestations, independent of any scientific test, are sufficient to support a charge of driving while intoxicated. State v. Hendon, 94-0516 (La.App. 1 Cir.4/7/95), 654 So.2d 447, 449. Whether behavioral manifestations are sufficient to support a charge of driving while intoxicated must be determined on a case-by-case basis. State v. Bourgeois, 00-1585 (La.App. 5 Cir. 3/14/01), 785 So.2d 848, 853. Refusal to take the Intoxilyzer test is admissible as evidence of intoxication under La.R.S. 32:666. State v. Washington, 498 So.2d 136 (La.App. 5 Cir.1986). Intoxication is an observable condition about which a witness may testify. State v. Allen, 440 So.2d 1330 (La.1983). It is not necessary that a conviction of D.W.I. be based upon a blood or breath alcohol test, and the observations of an arresting officer may be sufficient to establish the defendant's guilt. Id.
In State v. St. Amant, 504 So.2d 1094 (La.App. 5 Cir.1987), Ms. St. Amant was stopped because she was driving a car which fit a description of that being operated by a person who had been harassing and making threats against the complainant. When Ms. St. Amant was asked to exit her vehicle, the officer saw that she was unsteady on her feet, seemed confused, and smelled of alcohol. Ms. Amant was arrested on the harassment charge and DWI. She underwent a breath test at the correctional center, and she was also videotaped during a field sobriety test. During her trial, the trial judge viewed the videotape and concluded that Ms. St. Amant performed adequately on the field test. St. Amant, 504 So.2d at 1096. However, the Intoxilyzer test showed a result of .18 percent, indicating legal intoxication. Ms. St. Amant was convicted.
On review, the Fifth Circuit held that the results of Ms. Amant's Intoxilyzer test were inadmissible because the State failed to present evidence of compliance with the procedure established by the Department of Public Safety; in addition the defects in proof relating to the breath test cast doubt on the validity of the results. The appellate court then concluded that the evidence otherwise was insufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was intoxicated. The court noted that, aside from the inadmissible Intoxilyzer test, there was the videotaped field sobriety test, and the arresting officer's testimony relating his sensory impressions. Id. at 1097. The appellate court agreed with the trial court that the videotape failed to show that Ms. St. Amant was intoxicated. Because the videotape refuted the arresting officer's testimony that Ms. St. Amant was unsteady on her feet during the field test, "his testimony alone is insufficient to carry the State's burden of proof." Id. at 1098.
In State v. Clark, 97-1064 (La.App. 3 Cir. 4/1/98), 711 So.2d 738, writ granted on other grounds 98-1180 (La.9/25/98), 726 So.2d 2, Clark was not observed violating *826 any traffic laws nor did he perform any tests of intoxication. The Third Circuit considered the testimony of the arresting officer that, as Clark exited his vehicle after pulling in an apartment parking lot, he was somewhat hesitant on turning; Clark appeared to be stumbling and staggering when he walked towards the officer. When the officer began to question Clark, he detected a strong odor of alcoholic beverage on Clark's breath. Clark's speech was slurred; he had bloodshot eyes; and he was swaying as they were talking. Clark later fell against the wall in the Intoxilyzer room. He refused to breathe into the Intoxilyzer, and he refused to take a field sobriety test. Furthermore, an open beer container was found inside Clark's truck. A second officer who observed Clark at the sheriffs office confirmed that Clark fell, that his speech was slurred, and that there was a strong odor of alcohol on his breath. The court found that this testimony coupled with Clark's refusal to take any tests was sufficient to support his conviction.
In Clark, two officers testified that they observed the defendant's behavior. An open beer container was found inside Clark's vehicle. Both officers saw Clark fall against the wall of the sheriff's office. In the present case the police report only lists Officer Buras as the officer who observed Loisel. The record does not show that Loisel fell. The videotape is not a convincing indicator of Loisel's intoxication. In fact, the videotape supports a finding that Loisel's speech was not impaired and his demeanor does not indicate that he was intoxicated.
In State v. Holley, 32,156 (La.App. 2 Cir. 8/18/99), 742 So.2d 636, Holley had been involved in an auto accident. The two officers investigating testified that they smelled a strong odor of alcoholic beverage on Holley's breath. Both officers also testified that Holley exhibited slurred speech, spoke in a slow and deliberate manner, showed unsteadiness on his feet, and was swaying. One officer noted that Holley's eyes were red and bloodshot. Based on these observable behavioral manifestations, both officers believed that Holley was intoxicated. Additionally, one officer testified that Holley failed to successfully complete the "ABC" test administered at the accident scene and that he achieved the maximum points on the HGN test, indicating that he was impaired. Finally, the jury viewed a videotape in which Holley performed the "ABC" test with some difficulty and refused to perform other tests due to back pain. Holley also refused to take the Intoxilyzer, stating that his former attorney advised him not to do so. Most importantly, in the view of the appellate court, Holley admitted on the videotape that he drank two sixteen-ounce beers approximately an hour and ten minutes prior to the time of the second field sobriety test. The Second Circuit concluded, based on the officers' testimony and Holley's admission on the videotape that he had consumed two beers within a short time before the accident, and viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to prove intoxication beyond a reasonable doubt.
In both Holley and the present case, Holley and Loisel admitted to drinking. Holley stated that he had two 16-ounze beers one hour and ten minutes before the accident. Loisel said that he had a little to drink at a bar earlier (on his birthday). Loisel and Holley refused to take the breath test as well as all field sobriety tests. Loisel had minor problems with the alphabet. In Holley, the defendant was involved in a traffic accident whereas in the present case, Loisel was not. Two officers observed Holley's behavior whereas in the present case the police report *827 only refers to the observations of one officer.
State v. Kent, 610 So.2d 265 (La.App. 5 Cir.1992), is factually similar to the present case. The defendant was stopped after he passed the officer's parked unit in the early morning hours at an excessive rate of speed. According to the officer, Kent's headlights were off. Kent pulled over to the side of the highway as soon as the police vehicle drove up behind his truck. The arresting officer subsequently testified that Kent appeared to have some difficulty getting out of the truck, walking to the rear of the vehicle, and producing his driver's license when ordered to do so. The trooper also testified that that he noticed a moderate odor of alcohol emanating from Kent's person. Furthermore, it appeared to him that Kent's speech was unclear and his eyes appeared bloodshot and red. Kent did not refuse the first field sobriety test requested by the officer, and Kent did not clearly fail the test he took:
First the officer asked the defendant to recite the letters of the alphabet from D to Q. The defendant complied without any difficulty other than reciting that the letter "U" followed "P." Next, the officer asked him to count backward from 36 to 24. Although he continued counting backward beyond 24, the defendant again experienced no significant problems in following the officer's instructions. Trooper Winkler then told the defendant to outstretch his arms, tilt his head back and close his eyes. From that position, the defendant was directed to touch the tip of his nose with the index finger of each hand. The defendant missed the tip of his nose and instead touched his upper lip. On cross examination Trooper Winkler admitted he could not "tell for sure" whether any part of the defendant's finger was touching his nose as well as his upper lip. Following that, Trooper Winkler asked the defendant to perform a one-legged stand by standing on one leg while lifting the other leg six inches off the ground, keeping his arms at his side, and counting from 1,001 to 1,030. However, the defendant refused any further participation in the field sobriety test and did not perform the one-legged stand.

Kent, 610 So.2d at 267.
Kent was then arrested and transported to a central lock-up for administration of an Intoxilyzer test, which he refused after having his rights regarding chemical testing explained to him. However, Kent did request a blood test, which was never performed. At trial, Kent testified and denied he was driving without lights or was speeding, had difficulty walking, that his speech was slurred, or that he had anything to drink. He explained that he had worked late that night, gone home to shower, and was in a hurry to meet his wife in New Orleans at a motel where she was staying. Kent also testified that his refusal to take the Intoxilyzer test was because of his concern about the accuracy of that procedure, and thus he wanted a blood test because it would be more accurate and reliable. On appeal, the Fifth Circuit concluded that the evidence was insufficient to prove Kent's intoxication, stating:
The defendant's conviction in this case relies solely on the evidence of Trooper Winkler's observations and the results of the field sobriety test administered to the defendant. We have previously noted that, while the field sobriety test provides objective criteria on which an officer may base his belief that a subject is intoxicated, the officer's subjective opinion determines whether the suspect has passed the test. State v. Landry, *828 463 So.2d 761 ([La.App.] 5th Cir.1985), writ denied, 464 So.2d 1373 (La.1985). However, failure to pass a field sobriety test has been held sufficient evidence to support a conviction of driving while intoxicated. Id.

Here, however, after evaluating the evidence under the Jackson standard, we conclude that the evidence presented in this case was legally insufficient to prove the defendant's guilt beyond a reasonable doubt.
The defendant's initial actions upon being stopped by Trooper Winkler may just as plausibly be attributed to the anxiety of the circumstances as such actions may be attributed to alcohol consumption. The defendant did produce his driver's license at the officer's request. His nervous behavior in so doing was not at all inconsistent with the uncomfortable situation in which he found himself. Similarly, we are not convinced that the defendant's performance on the field sobriety test leads to the conclusion that the defendant was intoxicated. The defendant missed only one letter in reciting the alphabet; and he counted backward accurately from the number 36, failing only to stop at 24 as instructed by Trooper Winkler. These minor discrepancies might also be attributed to nervousness rather than intoxication. Additionally, the defendant's physical performance in touching his upper lip rather than his nose is not a convincing indicator of intoxication, as opposed to anxiety. When he was stopped, the defendant was driving without lights and at a speed higher than the posted limit. However, the state presented no evidence that the defendant's control over his vehicle was impaired. To the contrary, Trooper Winkler testified that the defendant pulled over to the side of the highway immediately and without incident as soon as the police vehicle, with its lights flashing, pulled behind the defendant's truck. After evaluating all of the prosecution's evidence in this case, we conclude that the evidence was legally insufficient to carry the state's burden of proving the defendant's guilt beyond a reasonable doubt. State v. St. Amant, 504 So.2d 1094 ([La.App.] 5th Cir. 1987). [Footnote omitted.]

Kent, 610 So.2d at 267-268.
In Kent one officer testified. In the present case, one officer provided statements in the police report. In both cases, the defendants'"failure" on the alphabet tests was minor and explainable as a result of nervousness. Deputy Buras reported that Loisel smelled of alcohol. Deputy Buras stated that immediately upon being stopped, Loisel attempted to mask his breath by lighting a cigarette and putting a mint in his mouth. The deputy also reported that Loisel's speech was slurred. Kent and Loisel refused to take the breath test and field sobriety tests. In Kent, the Fifth Circuit noted that although Kent was stopped for speeding and was driving without lights, the State provided no evidence that Kent's control over his vehicle was impaired. In the present case, one of the vehicle's headlights was out but Loisel was not speeding. In Kent, no videotape was provided. In the present case, the videotape shows that Loisel does not appear intoxicated.
Further, Loisel's traffic violation does not indicate that he was driving while intoxicated. When the police officer told Loisel that he had pulled too far up to the intersection, Loisel reasonably explained that had to stop sharply because of the car in front of him. There was no showing that he was weaving or driving off of the road. The videotape does not confirm that Loisel's speech was slurred or that he was incoherent. In fact, Loisel appears to be *829 alert. Loisel spoke courteously to the officer, and his demeanor was respectful. Loisel followed the officer's instructions. The videotape shows that Loisel did not have any trouble walking, standing up, or retrieving papers from his car. He did not fall, and he did not even lean against the car. Loisel stood next to the police car for about twenty minutes without losing his balance. Loisel's demeanor remained calm for the long period of time while he was waiting with the officer on the street and when Loisel was in the booking office. Although Loisel admitted that earlier he had been drinking a little, the videotape does not show that he was incapacitated or intoxicated. The videotape showed that Loisel's balance was steady, contrary to the arresting officer's statement in the police report that Loisel's balance was "unsure."
Loisel's refusal to take some of the tests may have been reason enough for the arrest; however, the officer's statements in the police report (in comparison to the videotape) are legally insufficient to carry the State's burden of proof for the conviction. Under the circumstances of this case, the evidence was not legally sufficient to show beyond a reasonable doubt that Loisel was driving while intoxicated in violation of La. R.S. 14:98.
Accordingly, Loisel's conviction is reversed, and his sentence is vacated.
WRIT GRANTED; CONVICTION REVERSED & SENTENCE VACATED.
NOTES
[1] The made of review is by application for supervisory writs rather than by appeal. La. R.S. 14:98; City of New Orleans v. Ballansaw, 475 So.2d 768 (La.1985); State v. Hall, 454 So.2d 409 (La.App. 4 Cir.1984).