930 So.2d 94 (2006)
STATE of Louisiana
v.
Trudie M. WALKER.
No. 2005-KA-0875.
Court of Appeal of Louisiana, Fourth Circuit.
March 29, 2006.
Charles Foti, Attorney General, Darryl W. Bubrig, Sr., District Attorney, Belle Chasse, Gilbert V. Andry IV, Assistant District Attorney, New Orleans, Counsel for Plaintiff/Appellee.
Michael Clement, Indigent Defender Board, Belle Chase, Counsel for Defendant/Appellant.
(Court composed of Judge TERRI F. LOVE, Judge MAX N. TOBIAS Jr., Judge EDWIN A. LOMBARD).
*95 TERRI F. LOVE, Judge.
Trudie Walker was charged with one count each of operating a vehicle while intoxicated, reckless operation of a vehicle, and speeding. At her arraignment, she plead not guilty to all counts. A trial was held wherein the State submitted the case on the basis of the police report and a videotape. The trial court found her guilty as charged of the intoxication and speeding counts and not guilty of the reckless operation count. The trial judge sentenced Ms. Walker on the driving while intoxicated ("DWI") to sixty days in parish prison, suspended, and placed her on two years inactive probation with various conditions, including a fine of $375.00. Additionally, the court sentenced her on the speeding count to serve twenty days in the parish prison or pay a fine of $75.00.

FACTS AND PROCEDURAL HISTORY
In the case at bar, no testimony was taken at trial; the State presented the police report and videotape made at the Belle Chasse Lockup. According to the police report, at approximately 6:45 a.m. on June 6, 2004, Deputy Donald Brown ("Deputy Brown") of the Plaquemines Parish Sheriff's Office observed the defendant, Trudie Walker ("Ms. Walker"), driving at a high rate of speed on La. 23 at Oakville. The deputy clocked the defendant at 74 m.p.h. in a 55 m.p.h. zone. The deputy followed Ms. Walker for a mile before stopping her, and during this interval he observed her car partially straddle the median. He also witnessed Ms. Walker discard a liquid substance from the car as it was moving. Deputy Brown stopped Ms. Walker and requested her driver's license, proof of insurance, and registration for her car. Ms. Walker promptly gave the deputy her license and proof of insurance, but she appeared unable to find the registration, even though it was sitting in her lap. Deputy Brown detected a strong odor of alcohol emanating from Ms. Walker, and he called for backup assistance. When Deputy Robert Cullum arrived, he too smelled alcohol emanating from Ms. Walker. The deputies asked Ms. Walker to exit her car, and when she did she stumbled a few steps.
The deputies asked Ms. Walker to take a field sobriety test, which she refused to take. The deputies then read Ms. Walker her rights and arrested her for DWI. The defendant was handcuffed and transported to the Belle Chasse Lockup. Once there, she was advised of her rights relating to a chemical test for intoxication and, again, asked to take a field sobriety test. She refused. She also refused to submit to a breathalyzer test.
The videotape began with Ms. Walker already seated at a table at the Belle Chasse Lockup. Soon thereafter, a deputy entered the room, and he advised Ms. Walker of her rights. During this advisement, Ms. Walker was slouching and rubbing her eyes, and at various times during the taping, she doubled over and put her head in her hands. A few times she also appeared to be leaning her head on the desk. The tape exhibits an upset Ms. Walker who broke into tears on several occasions.[1] In response to the deputy's question as to whether she had been drinking, Ms. Walker shrugged her shoulders, but she did admit that she had come from the Bounty bar just prior to being stopped by the police. The tape also reflects that Ms. Walker constantly fidgeted while being questioned by the deputy. She refused to take both field sobriety tests and a breathalyzer test, and she was *96 able to sign forms acknowledging that she had been advised of her right and had refused to submit to testing.

STANDARD OF REVIEW
In accordance with La.C.Cr.P. Art. 912.1 B(1), the defendant in the case, sub judice, has no right to appeal these convictions to this court, because they are all misdemeanors. However, she does have a right of judicial review by way of supervisory writs. La.C.Cr. P. Art. 912.1 C(1). This appeal is converted to a writ application for its consideration. State v. Landry, 01-0784 (La.App. 4 Cir. 12/12/01), 804 So.2d 791.

ASSIGNMENT OF ERROR, INSUFFICIENCY OF EVIDENCE
Although the trial court convicted her of both DWI and speeding, Ms. Walker asserts that the trial court erred in convicting her of DWI. Specifically, she contends that the State presented insufficient evidence to support her conviction of DWI. She argues that the videotape introduced at trial negates any finding that she was intoxicated at the time Deputy Brown stopped her.
In State v. Brown, 03-0897, p. 22 (La.4/12/05), 907 So.2d 1, 18, the Court set forth the standard for determining a claim of insufficiency of evidence:
When reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, the appellate court "must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." State v. Neal, 00-0674 (La.6/29/01) 796 So.2d 649, 657 (citing State v. Captville, 448 So.2d 676, 678 (La.1984)).
See also State v. Sykes, 04-1199 (La.App. 4 Cir. 3/9/05), 900 So.2d 156.
The defendant was charged with and convicted of driving while intoxicated in violation of La. R.S. 14:98. In order to sustain a conviction for this crime, the State must show that the defendant was operating a motor vehicle while under the influence of alcohol or drugs. Landry, 01-0784, pp. 4-5. 804 So.2d at 794. It is not necessary that the State present evidence of scientific testing or even field testing in order to prove that a defendant was intoxicated. As noted by this court in State v. Loisel, 01-2018, p. 5 (La.App. 4 Cir. 3/6/02), 812 So.2d 822, 825:
Some behavioral manifestations, independent of any scientific test, are sufficient to support a charge of driving while intoxicated. State v. Hendon, 94-0516 (La.App. 1 Cir. 4/7/95), 654 So.2d 447, 449. Whether behavioral manifestations are sufficient to support a charge of driving while intoxicated must be determined on a case-by-case basis. State v. Bourgeois, 00-1585 (La.App. 5 Cir. 3/14/01), 785 So.2d 848, 853. Refusal to take the Intoxilyzer test is admissible as evidence of intoxication under La.R.S. 32:666. State v. Washington, 498 So.2d 136 (La.App. 5 Cir.1986). Intoxication is an observable condition about which a witness may testify. State v. Allen, 440 So.2d 1330 (La.1983). It is not necessary that a conviction of D.W.I. be based upon a blood or breath alcohol test, and the observations of an arresting officer may be sufficient to establish the defendant's guilt. Id.

In support of her argument, the defendant quotes extensively from Loisel where, *97 as here, the evidence introduced at trial consisted of a police report and videotape. In Loisel, the police stopped the defendant for blocking a lane. The report indicated that the officer smelled alcohol on the defendant's breath, and the defendant's balance was unsure and his speech was slurred. The report also indicated that the defendant had trouble performing an alphabet field test and refused to perform a walking test. In addition, the report indicated that the defendant admitted he had been drinking. The officers took the defendant to the police station, where he refused to take a breathalyzer test. The officers then booked him with DWI and careless operation of a vehicle. The videotape of the stop and arrest, however, showed that the defendant had no problem with the alphabet test the first time he was asked to perform it and only mixed up a few letters the second time. The tape also showed that the defendant had no trouble walking or standing, and it also showed he was able to retrieve papers from his car without any difficulty. There was no indication in the tape that the defendant's speech was slurred, although his distance from the taping equipment made his speech somewhat indistinct. The defendant refused to perform a walking test. Although the trial court convicted him of DWI, on review this court reversed, finding that the videotape did not support the allegations in the police report and did not support a finding that the defendant was intoxicated.
In Loisel, this court discussed in some length State v. St. Amant, 504 So.2d 1094 (La.App. 5 Cir.1987); State v. Clark, 97-1064 (La.App. 3 Cir. 4/1/98), 711 So.2d 738[2]; State v. Holley, 32,156 (La.App. 2 Cir. 8/18/99), 742 So.2d 636; and State v. Kent, 610 So.2d 265 (La.App. 5 Cir.1992). In St. Amant, the officers stopped the defendant on a harassment charge. When she exited her car, the officers noted that she was unsteady on her feet, appeared confused, and smelled of alcohol. The officers arrested the defendant for DWI and for harassment, and at the police station the officers videotaped her performing field sobriety tests and a breathalyzer test.
The court convicted her of DWI. On appeal, the court threw out the results of the breathalyzer test because the State failed to show the procedures used in setting up the machinery and performing the test. The court also noted that the trial court, after looking at the videotape of the defendant's performance on the field sobriety tests at the police station, found that the defendant's demeanor and her performance on the field sobriety tests did not show that she was intoxicated, a conclusion with which the appellate court agreed. The Fifth Circuit reversed the defendant's conviction.
Likewise, in Kent, only the arresting officer and the defendant testified at trial. The officer stated that the defendant passed him on the Interstate 10, speeding and with his lights off. The officer activated his lights, and the defendant pulled to the side of the road immediately. The officer testified that the defendant had trouble getting out of his truck, walking back to the police car, and producing his license. The officer also testified that the defendant had a "moderate" odor of alcohol on his breath, bloodshot eyes, and unclear speech. The officer conducted field sobriety tests wherein the defendant skipped a letter in the alphabet test, counted backwards farther than requested, and touched his upper lip rather than the tip of his nose as requested. The defendant refused to perform the test where he stood on only one leg. The officer arrested the *98 defendant for DWI and transported him to the police station. The defendant refused to perform a breathalyzer test, but he volunteered to take a blood test, and this request was refused. By contrast, the defendant testified that he was not speeding and had his lights on when he passed the officer's vehicle. The defendant denied having any difficulty moving or speaking. He also testified that he refused to take the breathalyzer test because these tests are sometimes inaccurate, and instead he offered to take a blood test. Although the court convicted him of DWI, the appellate court reversed, finding that the defendant's initial actions were just as consistent with nervousness as with intoxication. The court also found that the defendant's performance on the field sobriety tests was not bad, and it further noted that the defendant immediately stopped after the officer activated his lights.
The appellate court also reversed the defendant's DWI conviction in State v. Sampia, 96,1460 (La.App. 1 Cir. 6/20/97), 696 So.2d 618. The defendant was involved in a one-car accident wherein her car ended up in a ditch. Some hours after the accident, an officer arrived on the scene and saw the car, which the defendant had vacated. He also noticed empty beer cans in the back of the car and an alcohol odor in the car. The defendant soon returned, accompanied by a tow truck. The defendant was crying but was cooperative with the officer, telling him that the car went into the ditch when she swerved to avoid an eighteen-wheeler which had crossed the center line into her path. At trial, the officer testified that the defendant had alcohol on her breath, slurred her words, and was swaying slightly. He also testified that she admitted having consumed a few drinks, which she denied at trial. He testified that she refused to perform any field sobriety tests, and he arrested her for DWI. At that point, she volunteered to take the tests, but he told her it was too late. At the police station, the defendant refused to perform a breathalyzer test. The defendant testified that she had had one beer approximately five hours before she came into contact with the officer and an hour before the accident. She reiterated that her car left the road as she was trying to avoid hitting the truck, which swerved into her lane of traffic. She testified that she remained at the scene of the accident for approximately an hour before someone came by and offered to assist her. At that point, she called the police and went back to her apartment to arrange for a tow truck to retrieve her car. It was only after returning to the scene of the crime that she encountered the officer. She also explained that the empty beer cans in the back of her car were from her boyfriend's use the night before the accident. On review, the court reversed the defendant's conviction, noting that there was nothing in the officer's testimony to refute the defendant's claim that the accident occurred up to four hours before the officer observed the defendant. The court found that the officer's general descriptions of the defendant's demeanor did not support a finding that she was intoxicated, and the fact that she was upset when she encountered him (he testified she was crying) could have affected her speech. The court stated that the officer's testimony did not support a finding that the defendant had any physical attributes of intoxication, which would have rejected the defendant's hypothesis of innocence.
By contrast, in both Clark and Holley, the court found that the evidence was sufficient to support the defendants' DWI convictions. In Clark, the officer was on the scene of an unrelated call when he observed the defendant park and exit his vehicle. The defendant was stumbling and *99 staggering, and when the officer approached the defendant, he noticed a strong odor of alcohol emanating from the defendant. In addition, the defendant's eyes were bloodshot and he was slurring his words. The officer arrested him and took him to the police station. Once there, the defendant continued slurring his words and staggering, actually falling against a wall at some point. He refused to perform any field sobriety tests or a breathalyzer test. There was also evidence that an open beer was found inside the defendant's truck. On review, the court affirmed the defendant's DWI conviction.
In Holley, the defendant was involved in an accident when he pulled in front of another car. The officer, who arrived on the scene of the accident soon after it occurred, saw that the defendant was unsteady as he exited his van. In addition, the defendant had a strong alcohol odor and bloodshot eyes, he swayed while being questioned, he slurred his speech, and he answered the officer's questions slowly and deliberately. He failed both the alphabet test and a horizontal gaze nystagmus test. The officer arrested the defendant. A videotape of the defendant's demeanor at the police station showed that he had trouble with a second alphabet test and refused to perform any more tests. He also continued to sway, and he admitted that he had consumed two sixteen-ounce beers. The court upheld the defendant's DWI conviction.
This court upheld the defendant's conviction in Landry. The officer stopped the defendant because he was not wearing his seat belt, and the officer discovered that the inspection sticker on the defendant's vehicle had expired. When the defendant exited his car at the officer's request, the officer noticed a "moderate odor of unknown alcoholic beverage" emanating from the defendant. The defendant then performed a few field sobriety tests, all the while denying that he had consumed any alcohol. The defendant also declined to submit to a breathalyzer test. On review, this court affirmed the defendant's conviction, noting that defendant performed poorly on the field sobriety tests even though the officer first demonstrated them to the defendant. This court noted that the trial court apparently found the officer's account of the stop and arrest more credible than that of the defendant.[3]
Here, as in Loisel, the State introduced both the police report and a videotape. Unlike Loisel, however, here the tape does not discredit the information in the police report concerning the defendant's state of intoxication. The tape does not establish that Ms. Walker was intoxicated once she arrived at Belle Chasse Lockup. Her words are inaudible on the tape, so it is unclear whether she was slurring her words at the time. The tape showed that she slouched during the interview, and she constantly fidgeted. The tape by itself would not prove that Ms. Walker was intoxicated at the time. However, the State also introduced the police report, wherein the deputy reported that he saw Ms. Walker cross the centerline and throw a liquid from the car before she was stopped. He also indicated that Ms. Walker had a strong odor of alcohol about *100 her and had trouble finding her car's registration, which was sitting in her lap at the time. The report indicates that Ms. Walker stumbled a little when she exited her car. Unlike in Loisel and St. Amant, Ms. Walker refused to take a field sobriety test either on the scene or at the lockup. Thus, there is no videotape to dispute the deputy's assertions that Ms. Walker was intoxicated at the time of the offense. Although the videotape does not prove Ms. Walker was intoxicated, it also does not contradict the information in the police report, which showed that Ms. Walker's car weaved over the center line or that Ms. Walker threw a liquid out of the car, smelled of alcohol, slurred her words, and stumbled when she got out of her car. Viewing the evidence in the light most favorable to the prosecution, the trial court was presented with sufficient evidence to find that Ms. Walker was intoxicated while operating her car. This claim has no merit.

DECREE
For the reasons outlined above, this appeal is converted to a writ, writ is granted, and relief denied.
APPEAL CONVERTED TO WRIT; WRIT GRANTED; RELIEF DENIED.
NOTES
[1] Unfortunately, the audio portion of the tape is not very good; apparently Ms. Walker was not close to the microphone (wherever it was placed), and her statements are inaudible.
[2] Writ granted and remanded on other grounds, 98-1180 (La.9/25/98), 726 So.2d 2.
[3] In various other cases the courts upheld the defendant's conviction based upon credibility determinations by the trial court in the face of conflicting testimony as to whether the defendant was intoxicated. See State v. Bourgeois, 00-1585 (La.App. 5 Cir. 3/14/01), 785 So.2d 848; State v. Worachek, 98 2556 (La.App. 1 Cir. 11/15/99), 743 So.2d 1269; State v. Minnifield, 31,527 (La.App. 2 Cir. 1/20/99), 727 So.2d 1207; State v. Hendon, 94 0516 (La. App. 1 Cir. 4/7/95), 654 So.2d 447; and State v. Smith, 93 1490 (La.App. 1 Cir. 6/24/94), 638 So.2d 1212.