965 So.2d 592 (2007)
STATE of Louisiana, Appellee,
v.
Robert Earl GAGE, Appellant.
No. 42,279-KA.
Court of Appeal of Louisiana, Second Circuit.
August 29, 2007.
*595 Annette Roach, Louisiana Appellate Project, for Appellant.
Paul J. Carmouche, District Attorney, William Edwards, Jeremy Lacombe, Assistant District Attorneys, for Appellee.
Before WILLIAMS, CARAWAY and DREW, JJ.
CARAWAY, J.
A jury convicted Robert Earl Gage ("Gage") of driving while intoxicated, fourth offense ("DWI Fourth"), in violation of La. R.S. 14:98(E). The trial court sentenced defendant to 10 years at hard labor, and ordered the sentence be served consecutively to the partially probated 10 year sentence previously imposed for another DWI Fourth conviction of defendant in 2004. Finding no error in the trial court proceedings, we affirm defendant's conviction, amend the sentence to be served without benefits and consecutively with the balance of any other sentence imposed for a prior conviction for any offense, and affirm the sentence as amended.

Facts
On November 4, 2004, Detective J. Cromer was driving an unmarked police vehicle in Shreveport and observed a white pick-up truck speeding past him on the inside lane. Officer Cromer followed behind, watching defendant change lanes erratically and narrowly miss colliding with a taxi at a red light. He continued to follow defendant onto a neighborhood street, where Gage drove into a driveway. Cromer *596 had already radioed for patrol back-up during his pursuit, before activating his lights and getting out of the unmarked police car. Cromer exited his unmarked unit to question the defendant. The detective was in plain clothes but wearing a dark vest marked "POLICE" and his badge. He identified himself as a police officer. He noticed a strong odor of alcohol and that defendant's speech was slightly slurred. Gage's comments concerned a sibling who had just died. Several patrol units arrived to handle the arrest. When Gage failed to produce his driver's license, Officer Cromer discovered defendant's license was suspended and he had numerous prior convictions, including several offenses for DWI. Officer Cromer concluded the defendant was impaired and advised him of his Miranda rights. No field sobriety tests were conducted on Gage in the driveway. Officer Jones transported defendant to the Police Department Traffic Unit (or Selective Enforcement) for field sobriety testing.
The videotape recorded at the Police Department Traffic Unit captured the details of the attempts at chemical and sobriety testing of Gage before and after his invocation of the right to counsel. Officer Devries testified at trial that Gage's speech was slurred and he detected the odor of alcohol. The horizontal gaze nystagmus ("HGN") test conducted by Devries reflected Gage's intoxication. Some of the videotape was played for the jury.
At trial, defendant's counsel stipulated three prior DWI convictions as described in the amended bill of information. These consisted of (1) Gage's guilty plea to Second Offense DWI on February 5, 1997, in Shreveport City Court, Docket 762,331; (2) a guilty plea to Second Offense DWI on May 20, 2002, in the First Judicial District Court, Caddo Parish, Docket 216,875; and (3) a guilty plea to Fourth Offense DWI on March 30, 2004, also in Caddo Parish district court.
Gage testified at trial that he was extremely upset when he was arrested for the instant offense, due to his brother's death, and other recent family deaths. His blamed his "loss of sanity" on overwhelming grief and denied any connection between his behavior and drinking alcohol. He acknowledged the offenses detailed on his rap sheet and blamed this prior misconduct on drug addiction. Gage's past convictions included possession of CDS, theft, public drunkenness, battery, criminal damage to property, driving under suspension and DWI. He acknowledged that his operation of a motor vehicle before his arrest for the present offense violated the terms of his probation for his March 2004 DWI Fourth conviction.
The six person jury convicted Gage of Fourth Offense DWI. Gage appeals.

Discussion

I.
Appellant assigns as error insufficient evidence for proof of his conviction for the offense, and instead attributes his impaired condition to bereavement over his brother's death. He argues that the state failed to negate this hypothesis of innocence.
The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981). The standard of appellate review for a sufficiency claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Wiltcher, 41,981 (La.App.2d Cir.5/9/07), *597 956 So.2d 769; State v. Murray, 36,137 (La.App.2d Cir.8/29/02), 827 So.2d 488, writ denied, 02-2634 (La.9/5/03), 852 So.2d 1020. This standard, now legislatively embodied in La.C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165, 1166. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442, 443. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508, writ denied, 02-3090 (La.11/14/03), 858 So.2d 422.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of the evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, 614, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747; State v. Barakat, 38,419 (La.App.2d Cir.6/23/04), 877 So.2d 223, 227. To convict a defendant based upon circumstantial evidence, every reasonable hypothesis of innocence must be excluded. State v. Barakat, supra, citing La. R.S. 15:438. In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Burd, 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219, writ denied, 06-1083 (La.11/9/06), 941 So.2d 35; State v. Wiltcher, supra.
To convict a defendant of DWI Fourth, the state must prove that the defendant has had three other prior valid convictions, as defined by La. R.S. 14:98(F)(1), and that these convictions are not stale under La. R.S. 14:98(F)(2). State v. Pickard, 40,422 (La.App.2d Cir.12/14/05), 918 So.2d 485, 489, citing State v. Inzina, 31,439 (La.App.2d Cir.12/9/98), 728 So.2d 458. La. R.S. 14:98 provides in part that the crime of operating a vehicle while intoxicated is the operating of any motor vehicle when the operator is under the influence of alcoholic beverages or the operator's blood alcohol concentration is 0.08 percent or more by weight based on grams of alcohol per 100 cubic centimeters of blood. To convict an accused of driving while intoxicated, the state need only prove that the defendant was operating a vehicle and that the defendant was under the influence of alcohol or drugs. Some behavioral manifestations, independent of any scientific tests, are sufficient to support a charge of driving while intoxicated. State v. Harper, 40,321 (La.App.2d Cir.12/14/05), 916 So.2d 1252; State v. Courtney, 30,629 (La. App.2d Cir.5/13/98), 714 So.2d 176. It is not necessary that the conviction be based upon a breath or blood alcohol test. The observations of an arresting officer may be sufficient to establish guilt. Intoxication is an observable condition about which a witness may testify. State v. Allen, 440 So.2d 1330 (La.1983); State v. Blackburn, 37,918 (La.App.2d Cir.1/28/04), 865 So.2d 912; State v. McDonald, 33,013 (La.App.2d Cir.3/1/00), 754 So.2d 382.
Officer Devries testified that defendant showed nystagmus at all six points when *598 the HGN test was conducted. In addition to this poor performance, both police officers testified that defendant smelled of alcohol and slurred his speech. Officer Cromer initially observed defendant speeding, changing lanes of traffic repeatedly, and almost colliding with another vehicle. Gage's conduct at the Traffic Unit shown on videotape also indicates his intoxication. The totality of these circumstances led both officers to conclude that Gage was impaired.
In State v. Harper, supra, the defendant did not submit to any field sobriety tests other than the HGN, but this court found the evidence was sufficient to support his conviction based on the totality of the evidence. Testimony concerning the defendant's disoriented behavior, the smell of alcohol, evidence of spilled beer inside his vehicle, his verbal abuse of the officers, and poor performance on the HGN test, was sufficient to prove the essential elements of the charged offense.
In this case, the lack of additional field sobriety testing similarly does not hamper the state from proving this defendant was operating a vehicle while intoxicated. The testimony of the officers' observations of the defendant's condition and his recklessness amply support the conviction. Accordingly, this assignment is without merit.

II.
In his next assignment of error, defendant argues that the jury's viewing of the Traffic Unit videotape violated his constitutional rights and prejudiced him in multiple ways. First, he asserts that Officer Devries continued to question him after he invoked his right to counsel, and those statements should have been suppressed. The videotape is contended to be testimonial in nature, which would have violated his Fifth Amendment right against self-incrimination. He also argues that portions of the videotape showing him waving his arms were overly prejudicial. Finally, during the course of the discussion on the video, defendant's prior arrest record was alluded to by the officer.
The Traffic Unit videotape demonstrated defendant's behavior during Officer Devries' interrogation. Gage is shown being advised of the Miranda rights for a third time[1] and further, the consequences of his refusal of chemical testing. Devries questions Gage as to his education level, medication he takes, and disabilities. Gage is standing near perpendicular white lines painted on the floor, with his hands in his pockets. Devries instructs him to put his feet together and remove his hands from his pockets. At that point Gage asserts he was already searched by Officer Jones, but removes change from his pants pocket. Gage acknowledges the camera, and then argues he was not searched. After Devries tells Gage to take the change off the table and put it back in his pocket, Gage deliberately counts the change before complying.
The next portion of the tape shows Gage standing in the same place with his hands at his sides. He refuses to recite the alphabet when Devries requests him to do so. At that point, Gage says he is refusing "everything," "ask [his] lawyer," and "talk to my lawyer." Hearing this, Devries clarifies that Gage wants a lawyer and the discussion stops momentarily. Officer Devries then goes to the table to calibrate the intoxilyzer. As he walks towards the spot where Gage stood, the officer waves his arms and says "whew," to indicate an unpleasant odor. Gage immediately mimmicks Devries' motions with *599 exaggerated gestures as Gage sits down in a chair.
Then, while working with the intoxilyzer, Officer Devries casually asks Gage "how many times have I arrested you?" Gage answers contemporaneously, "I don't know," as Officer Devries comments "too many." Gage responds by saying "call your congressman."
There is another momentary pause while Gage is still seated and Officer Devries is calibrating the intoxilyzer. Gage begins tapping his feet and turns to Officer Jones, who is off-camera, asking him twice to "look me in my eyes." Officer Devries is called "cool," then a derogatory name, and Officer Jones is called "sad" after telling Gage how long he has been on the police force. Gage tells Devries he "looks great." The banter continues before Gage is asked how old he is and whether he will take the intoxilyzer test. Officer Devries holds the tubing apparatus near Gage before Gage refuses the test. Finally, Gage gets out of the chair, pats Officer Devries on the back, and leaves the room.
Overall, the videotape presented evidence of a testimonial and non-testimonial nature during the general booking and sobriety testing process leading to Gage's ultimate refusal of the intoxilyzer test. The tape's basis for relevance to the state's case was its depiction of Gage and his speech. At times, Gage is seen in a somewhat overly animated state from which the fact-finder could infer his intoxication. Gage's slightly wild hand gesture for which he now claims prejudice was not in response to any questioning by the officer. Also, the evidence of Gage's refusal to submit to the intoxilyzer test was admissible. La. R.S. 32:666(A)(2)(c). Nevertheless, the defendant's conduct on the tape was of marginal value to the state's case. Because of Gage's acquaintance with Officer Devries, his actions can be viewed as merely horseplay and rowdy exchanges. The tape contained however the significant problems of the officers' failure to stop all questioning after Gage's request for counsel and Officer Devries' general statement of Gage's prior arrests.
In Pennsylvania v. Muniz, 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990), the United States Supreme Court examined the difference between testimonial and non-testimonial evidence when deciding the admissibility of a videotape depicting a DWI investigation. The defendant had not been given the Miranda rights before he was taken to a booking center and asked routine identification questions. The Miranda rights were given after defendant refused the breath test. Defendant made incriminating remarks while field sobriety tests were administered. The court analyzed the Self-Incrimination Clause of the Fifth Amendment. The court observed that the privilege protects a criminal defendant from being compelled to testify against himself or otherwise provide evidence of a testimonial or communicative nature, but that it does not prevent the state from gathering real or physical evidence such as fingerprints, photographs, blood samples, or handwriting or voice exemplars. Id., 496 U.S. at 588-591, 110 S.Ct. at 2644-2645, citing United States v. Dionisio, 410 U.S. 1, 7, 93 S.Ct. 764, 768, 35 L.Ed.2d 67 (1973), Gilbert v. California, 388 U.S. 263, 266-267, 87 S.Ct. 1951, 1953, 18 L.Ed.2d 1178 (1967), Schmerber v. California, 384 U.S. 757, 764, 86 S.Ct. 1826, 1832, 16 L.Ed.2d 908 (1966). The court noted that the Miranda procedural safeguards, Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), protect a criminal defendant's right against self-incrimination during custodial interrogation. Pennsylvania v. Muniz, supra, 496 U.S. at 589-590, 110 S.Ct. at 2643-2644.
*600 For evidence to be testimonial, "an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information." Id., 496 U.S. at 588, 110 S.Ct. at 2644, quoting Doe v. United States, 487 U.S. 201, 210, 108 S.Ct. 2341, 2347, 101 L.Ed.2d 184 (1988). The court characterized the manner in which the defendant spoke as non-testimonial and described his slurred speech as incriminating evidence of his intoxication. Id., 496 U.S. at 590-591, 110 S.Ct. at XXXX-XXXX. Even so, the court noted that most verbal responses are testimonial because "there are few instances in which a verbal statement, either oral or written, will not convey information or assert facts." Id., 496 U.S. at 597, 110 S.Ct. at 2648. Thus, the Muniz court found that defendant's inability to answer a question regarding his birthday should have been suppressed because the Miranda warnings had not yet been given and the response to the question was testimonial because it required a factual response. Id., 496 U.S. at 598-600, 110 S.Ct. 2638. However, the pre-Miranda responses to general booking questions were admissible, in spite of being testimonial because these routine questions are exempt from the requirements of Miranda. Id., 496 U.S. at 601-602, 110 S.Ct. at 2650. Defendant's incriminating statements during field sobriety testing or refusal of the breath test were found admissible because they were not made in response to custodial interrogation. Id., 496 U.S. at 602-605, 110 S.Ct. at 2651-2652.
A defendant may invoke his Miranda rights at any time prior to or during questioning. State v. Leger, 05-0011 (La.7/10/06), 936 So.2d 108, at 124, citing State v. Taylor, 01-1638 (La.1/14/03), 838 So.2d 729, 739, cert. denied, 540 U.S. 1103, 124 S.Ct. 1036, 157 L.Ed.2d 886 (2004). If a defendant requests counsel during custodial interrogation, questioning must cease until counsel had been made available to him or unless the defendant reinitiates conversation. Davis v. United States, 512 U.S. 452, 458, 114 S.Ct. 2350, 2354-2355, 129 L.Ed.2d 362 (1994), citing Edwards v. Arizona, 451 U.S. 477, 484-485, 101 S.Ct. 1880, 1884-1885, 68 L.Ed.2d 378 (1981). Defendant's remarks are admissible when they do not result from custodial interrogation or questioning "reasonably likely to elicit an incriminating response." State v. Ross, 95-1798 (La.3/8/96), 669 So.2d 384, 386, citing Rhode Island v. Innis, 446 U.S. 291, 302, 100 S.Ct. 1682, 1690, 64 L.Ed.2d 297 (1980). While statements responding to police-initiated custodial interrogation are inadmissible when the defendant has invoked his right to counsel, statements made by the defendant when he initiates further communication are admissible even if he has previously invoked his right to counsel. Id., citing Edwards v. Arizona, 451 U.S. 477, 484-485, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981); see also State v. Caston, 40,054 (La.App.2d Cir.9/28/05), 912 So.2d 413, 416, citing Edwards v. Arizona, supra.
From our review of the videotape, Gage did invoke his right to counsel which was acknowledged by Officer Devries. However, other than the one question posed by Officer Devries regarding Gage's prior arrests, which we will consider separately below, we find no further custodial interrogation on the tape. Gage gave no incriminating testimonial statements thereafter, and he subsequently reinitiated the friendly banter between himself and the officers during the routine process for the attempted administration of the sobriety tests. During that banter, the depictions on the tape of his manner and speech were not the product of custodial interrogation.
*601 Regarding Officer Devries' question, "how many times have I arrested you," the comment was clearly a rhetorical question, made as the officer was standing next to Gage dealing with the intoxilyzer device, and not interrogation. Significantly, the comment was not singled out in any manner in the arguments for defendant's motion to suppress the tape. The general reference to other crimes should have been excised from the tape. Yet, the jury received knowledge of Gage's prior arrests for the predicate DWI offenses, and the presentation of his defense by his own testimony exposed him to a complete review of his criminal record.
This court has previously found that the "harmless error" test set forth in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), applies to analyzing statements admitted in violation of Miranda. State v. Finch, 31,888 (La. App.2d Cir.5/5/99), 733 So.2d 716, 724-725, citing State v. Gibson, 391 So.2d 421 (La. 1980). See also State v. Koon, 96-1208 (La.5/20/97), 704 So.2d 756. In applying the Chapman test, the reviewing court must determine "whether there is a reasonable possibility that the erroneously admitted evidence might have contributed to the conviction and requires that the reviewing court be able to declare a belief that the error was harmless beyond a reasonable doubt." State v. Finch, supra, 733 So.2d at 725, citing State v. Garris, 603 So.2d 277 (La.App. 2d Cir.1992), writ denied, 607 So.2d 564 (La.1992). Likewise, admission of evidence revealing other crimes of the defendant is subject to a harmless error analysis. State v. Maise, 00-1158 (La.1/15/02), 805 So.2d 1141.
Therefore, in any event, defendant's assertions regarding the suppression of that portion of the videotape after his request for counsel would require the application of a harmless error analysis. As reviewed above, the guilty verdict in this trial was surely unattributable to the asserted error. This assignment of error is without merit.

III.
Defendant next asserts the following claims of ineffective assistance of counsel: (1) stipulation of two predicate DWIs with tainted guilty pleas; (2) failure to object to improper or insufficient jury instructions; and (3) failure to object to the state's closing and rebuttal arguments.
The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution. See State v. Wry, 591 So.2d 774, 778 (La.App. 2d Cir.1991). A claim of ineffectiveness of counsel is analyzed under the two-prong test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish that his counsel was ineffective, the defendant first must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. The relevant inquiry is whether counsel's representation fell below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases. See Strickland v. Washington, supra. The assessment of an attorney's performance requires his conduct to be evaluated from counsel's perspective at the time of the occurrence. A reviewing court must give great deference to trial counsel's judgment, tactical decisions, and trial strategy, strongly presuming he has exercised reasonable professional judgment. See State v. Moore, 575 So.2d 928, 931 (La.App. 2d Cir.1991). Secondly, the defendant must show that counsel's deficient *602 performance prejudiced his defense. This element requires a showing the errors were so serious as to deprive the defendant of a fair trial, i.e., a trial whose result is reliable. See Strickland v. Washington, supra. The defendant must prove actual prejudice before relief will be granted. It is not sufficient for the defendant to show the error had some conceivable effect on the outcome of the proceedings. Rather, he must show that but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. See Strickland v. Washington, supra; State v. Pratt, 26,862 (La.App.2d Cir.4/5/95), 653 So.2d 174, 178, writ denied, 95-1398 (La.11/3/95), 662 So.2d 9. A defendant making a claim of ineffective assistance of counsel must identify certain acts or omissions by counsel which led to the claim; general statements and conclusory charges will not suffice. See Strickland v. Washington, supra; State v. Jordan, 35,643 (La.App.2d Cir.4/3/02), 813 So.2d 1123, 1134, writ denied, 02-1570 (La.5/30/03), 845 So.2d 1067.
Claims of ineffective assistance of counsel are more properly raised in an application for post-conviction relief in the trial court because it provides the opportunity for a full evidentiary hearing under La. C.Cr.P. art. 930. State v. Lane, 40,816 (La.App.2d Cir.4/12/06), 927 So.2d 659, 669, writ denied, 06-1453 (La.12/15/06), 944 So.2d 1283. When the record is sufficient, however, allegations may be resolved on direct appeal in the interest of judicial economy. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Lane, supra.
Gage's assertions regarding the two predicate offenses will be more appropriately addressed in the post-conviction relief process. The Boykin transcript of the guilty plea of one of those prior offenses is not in evidence, and an application for post-conviction relief will afford Gage the opportunity to develop further evidence regarding those guilty pleas.
The defendant next argues the trial court's instructions to the jury were incorrect or insufficient and that trial counsel was ineffective for failing to object to them. Specifically, Gage contends that counsel should have requested an instruction concerning how refusal of the intoxilizer should be considered and the defendant's right to refuse such a test, as well as instructions regarding the HGN test. Gage also argues that the trial court's instructions detailing the elements of the offense failed to tell the jury that defendant must be under the influence while operating a motor vehicle, and these collective individual flaws in the instructions warrant reversal.
The failure to make a contemporaneous objection to jury instructions waives review of those jury instructions on appeal. State v. Draughn, 05-1825 (La.1/17/07), 950 So.2d 583, 622, citing La.C.Cr.P. arts. 801(C), 841, State v. Wessinger, 98-1234 (La.5/28/99), 736 So.2d 162, 181, cert. denied, 528 U.S. 1050, 120 S.Ct. 589, 145 L.Ed.2d 489 (1999), superseded by statute on other grounds, State v. Gomez, 00-566 (La.1/17/01), 778 So.2d 549. Even so, jury instructions may be reviewed on appeal in spite of the lack of a contemporaneous objection when the alleged error violates a fundamental due process right. State v. Ruffins, 41,033 (La.App.2d Cir.9/20/06), 940 So.2d 45, 52, citing State v. Williamson, 389 So.2d 1328 (La.1980); State v. Jarvis, 01-1277 (La.App. 4th Cir.2/13/02), 811 So.2d 38, writ denied, 03-248 (La.2/13/04), 867 So.2d 677; State v. Lowery, 33,905 (La.App.2d Cir.2/28/01), 781 So.2d 713, 729, writ denied, XXXX-XXXX (La.2/22/02), 809 So.2d 978.
Defendant counsel made no contemporaneous objection to the jury instructions. Nevertheless, we will examine these issues *603 in addressing Gage's claim of ineffective assistance of counsel.
According to La.C.Cr.P. art. 802, the trial court shall charge the jury of the following: (1) the law applicable to the case; (2) that the jury is the judge of the law and of the facts on the question of guilt or innocence, but that it has the duty to accept and to apply the law as given by the court; and (3) that the jury alone shall determine the weight and credibility of the evidence. A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given. La.C.Cr.P. art. 807; State v. Lowery, supra, 781 So.2d at 730; State v. Gipson, 28,113 (La.App.2d Cir.6/26/96), 677 So.2d 544, writ denied, 96-2303 (La.1/31/97), 687 So.2d 402. Failure to give a requested jury instruction constitutes reversible error only when there is a miscarriage of justice, prejudice to the substantial rights of the accused, or a substantial violation of a constitutional or statutory right. State v. Tate, 01-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Marse, 365 So.2d 1319 (La.1978).
In La. R.S. 32:666(A)(2), our law provides that a person under arrest for a DWI violation may refuse to submit to a chemical test for alcohol "subject to" the countervailing effect of the introduction of the evidence of his refusal of such testing in any criminal action against him. A restatement of that law in a requested jury charge would arguably serve only to highlight in the minds of the jury the inference of guilt raised by Gage's refusal, which the law indicates is admissible by the state as evidence against the defendant. Trial counsel's election not to request a special jury charge concerning Gage's refusal of chemical testing was not prejudicial so as to deprive him of a fair trial. Moreover, the videotape evidence demonstrates that the jury heard Officer Devries advising the defendant of his right to refuse the test and the consequences of refusing the chemical testing.
Defendant further argues that the jury should have been instructed regarding how the evidence of the HGN test should be considered and how the results of the test do not establish proof beyond reasonable doubt. In State v. Armstrong, 561 So.2d 883, 887 (La.App. 2d Cir.1990), writ denied, 568 So.2d 1077 (La.1990), this court found the HGN test meets the standard of admissibility and, with a proper foundation, may be admitted as evidence of intoxication. State v. Armstrong, supra. This foundation is laid when a showing is made that the officer who administered the test was trained in the procedure, was certified in its administration and that the procedure was properly administered.
At trial, the foundation of the officer's training and experience for the HGN test was subject to cross-examination. Also, the meaning of the test as it relates to a person's intoxication was explained and was subject to cross-examination. Our review shows that the jury was instructed that it was "up to them" to determine the weight and credibility of the evidence. This same instruction encompasses the jury's determination of the weight and credibility afforded the results of the HGN test which Officer Devries performed on the defendant. Therefore, under Article 807, the jury was generally charged concerning the weight and credibility of evidence, and no further special charge was required.
Defendant next claims the trial court failed to instruct the jury that the *604 state must prove that a DWI defendant "must be under the influence while driving." The trial court specifically instructed the jury that "[t]he crime of fourth offense driving while intoxicated is the operating of any motor vehicle while under the influence of an alcoholic beverage after the defendant has previously been convicted of operating a vehicle while intoxicated on the three prior occasions." The lack of any objection to this legal description of the elements of the offense is not ineffective assistance of counsel.
In his last argument regarding ineffective assistance of counsel, Gage argues that the prosecutor's rebuttal statement "that people who drink and drive cause a lot of funerals," was improper since no wreck or fatality was involved here and no evidence was presented to back up the assertion. The defendant also argues that the state improperly commented on defendant's refusal of field sobriety tests, and his counsel was ineffective for failing to object.
No contemporaneous objections to the state's closing or rebuttal arguments were made so the issue is not preserved for appellate review. La.C.Cr.P. art. 841; State v. Bridgewater, 00-1529 (La.1/15/02), 823 So.2d 877, 900, cert. denied, 537 U.S. 1227, 123 S.Ct. 1266, 154 L.Ed.2d 1089 (2003). However, because defendant couches the issue as another example of ineffective assistance of counsel, it is necessary to review the underlying claim.
Code of Criminal Procedure Article 774 defines the parameters of argument and rebuttal argument as follows:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant.
Prosecutors are given wide latitude in making closing arguments, but that latitude is not without boundaries. State v. Harris, 01-2730 (La.1/19/05), 892 So.2d 1238, 1256, cert. denied, 546 U.S. 848, 126 S.Ct. 102, 163 L.Ed.2d 116 (2005), citing State v. Taylor, 93-2201 (La.2/28/96), 669 So.2d 364, 374, cert. denied, 519 U.S. 860, 117 S.Ct. 162, 136 L.Ed.2d 106 (1996), State v. Sanders, 93-0001 (La.11/30/94), 648 So.2d 1272, 1285, cert. denied, 517 U.S. 1246, 116 S.Ct. 2504, 135 L.Ed.2d 194 (1996); State v. Lawrence, 40,278 (La. App.2d Cir.3/15/06), 925 So.2d 727, 748. The courts of this state have repeatedly "warned prosecutors they are not to turn closing arguments into a plebiscite on crime." Id., citing State v. Eaton, 524 So.2d 1194, 1208 (La.1988), cert. denied, 488 U.S. 1019, 109 S.Ct. 818, 102 L.Ed.2d 807 (1989). Going beyond that latitude will not warrant reversal unless the reviewing court is "thoroughly convinced the remark influenced the jury and contributed to its verdict." Id., citing State v. Eaton, supra, 524 So.2d at 1208. Even when the prosecutor's statements are excessive or improper, "credit should be accorded to the good sense and fair-mindedness of the jurors who have seen the evidence and heard the arguments." State v. Bridgewater, supra, 823 So.2d at 902, citing State v. Kyles, 513 So.2d 265, 276 (La.1987).
During closing argument, Gage's counsel spoke at length about how defendant was mourning his brother's recent death as well as five close relatives who had also died. In rebuttal, the state responded to defendant's arguments regarding his grief:
The Judge is going [sic] instruct you with the charges. Part of those charges *605 that in making your decision you are not to be influenced by sympathy, passion, prejudice, or public opinion. We have heard about five deaths in his family, and while those are tragic, those are not here to sway you. If that was the case then I could sit here and say to you that sways you about the fact that people who drink and drive cause a lot of funerals. That's not what you are here to determine. You can't be swayed by passion and sympathy. You have to observe the facts and the evidence presented in here today.
(Emphasis added.)
While the statement that drunk drivers cause funerals could be improper argument in a DWI case, in this context, the prosecutor was addressing defendant's plea for sympathy due to bereavement. We do not consider this improper when viewed in context. In light of other evidence proving intoxication, the use of the phrase did not meaningfully contribute to the jury's verdict, and it is not reversible error even if considered improper under the circumstances. See State v. Cowden, 04-707 (La.App. 1st Cir.11/30/04), 889 So.2d 1075, 1090-92, writ denied, 05-3201 (La.4/8/05), 899 So.2d 2 (Argument that defendant's drunk driving could have put the lives of the jurors and their children at risk was outside the scope of proper rebuttal argument, but it did not constitute reversible error). Thus, the lack of an objection here did not constitute ineffective assistance of counsel.
Neither do we find the state's comments on defendant's refusal of chemical testing improper. The state noted in its closing argument that the videotape showed defendant's opportunity to take the intoxilyzer test and his refusal; that defendant testified why he refused; that defendant also refused other standard field sobriety tests; and that defendant could not be forced to take the tests. The state later commented that as one part of the evidence, defendant's refusal tended to prove intoxication.
As stated above, Louisiana law affords a defendant the right to refuse chemical testing for alcohol, yet allows evidence of such refusal to be admitted at trial. La. R.S. 32:666(A)(2). Considering this somewhat dichotomous situation, the jurisprudence has held that the refusal to take the chemical test is admissible as evidence of intoxication. State v. Walker, 05-875 (La. App. 4th Cir.3/29/06), 930 So.2d 94; State v. Loisel, 01-2018 (La.App. 4th Cir.3/6/02), 812 So.2d 822; State v. Conner, 02-363 (La.App. 5th Cir.11/13/02), 833 So.2d 396. Thus, the state's closing argument was proper under La.C.Cr.P. art. 774 because it dealt with the evidence admitted at trial, conclusions drawn therefrom and the applicable law.
These assignments dealing with ineffective assistance of counsel are therefore without merit.

IV.
Defendant's final assignments concern alleged problems caused by the differing sentencing options under the DWI statute. Gage asserts that the sentence imposed by the trial court is illegal because it fails to comply with the applicable sentencing provisions articulated in La. R.S. 14:98(E). Defendant's counsel further argues that Gage should have been sentenced under the provisions of La. R.S. 14:98(E)(1)(a), and that a portion of the sentence should have been suspended in light of subsequent modifications to the statutory language dealing with sentencing ranges. He also argues that he was never informed by the bill of information regarding the harsher penalty exposure. Additionally, it is argued that the trial court imposed sentence immediately after the denial of defendant's *606 motion for new trial, without obtaining a valid waiver of the sentencing delays. Finally, he argues one further ineffective assistance of counsel claim concerning the allegedly erroneous sentencing provision read to the jury during the jury charge.
The sentencing provisions of La. R.S. 14:98(E)[2] state:
E. (1)(a) Except as otherwise provided in Subparagraph (4)(b) of this Subsection, on a conviction of a fourth or subsequent offense, notwithstanding any other provision of law to the contrary and regardless of whether the fourth offense occurred before or after an earlier conviction, the offender shall be imprisoned with or without hard labor for not less than ten years nor more than thirty years and shall be fined five thousand dollars. Sixty days of the sentence of imprisonment shall be imposed without benefit of probation, parole, or suspension of sentence. The court, in its discretion, may suspend all or any part of the remainder of the sentence of imprisonment. If any portion of the sentence is suspended, the offender shall be placed on supervised probation with the Department of Public Safety and Correction, division of probation and parole, for a period of time not to exceed five years, which probation shall commence on the day after the offender's release from custody.
(4)(a) If the offender has previously been required to participate in substance abuse treatment and home incarceration pursuant to Subsection D of this Section, the offender shall not be sentenced to substance abuse treatment and home incarceration for a fourth or subsequent offense, but shall be imprisoned at hard labor for not less than ten nor more than thirty years, and at least three years of the sentence shall be imposed without benefit of suspension of sentence, probation, or parole.
(b) If the offender has previously received the benefit of suspension of sentence, probation, or parole as a fourth offender, no part of the sentence may be imposed with benefit of suspension of sentence, probation, or parole, and no portion of the sentence shall be imposed concurrently with the remaining balance of any sentence to be served for a prior conviction for any offense.
The trial court sentenced defendant to ten years at hard labor and a $5,000 fine for the instant offense. It reviewed defendant's conviction stemming from the predicate DWI Fourth offense, for which Gage was on probation. The trial court revoked Gage's probation for the prior DWI Fourth conviction, and imposed the original sentence for the predicate offense, noting that Gage was now ineligible for the accrual of the benefits of suspension or home incarceration provided for in the prior sentence. Finally, the trial court ordered that both sentences be served consecutively to each other, pursuant to the statute, with credit for time already served.
As noted above, the present offense was defendant's second conviction for DWI Fourth. The prior DWI Fourth conviction was stipulated as a predicate for the current charge. Because the benefits of suspension, probation, or parole as a fourth offender were already received by Gage, the appropriate sentencing provision here is contained in La. R.S. 14:98(E)(4)(b). State v. Corbin, 42,384 (La.App.2d *607 Cir.8/15/07), 964 So.2d 431. La. R.S. 14:98(E)(1)(a) expressly excludes the present situation if one has been previously convicted of DWI Fourth, and is therefore not applicable. Likewise, Subsection (E)(4)(a), which Gage misleadingly asserts in brief, is not the governing sentencing provision.
Subsection (E)(4)(b) must be read in conjunction with La. R.S. 14:98(E)(1)(a) describing the sentencing range of ten to thirty years with or without hard labor[3] and mandating the imposition of a $5,000 fine. See, State v. Jones, 41,242 (La. App.2d Cir.8/23/06), 938 So.2d 1080 (the minimum sentence which could be imposed under La. R.S. 14:98(E)(4)(b) is "ten years at hard labor without the benefit of parole, probation, or suspension of sentence and a fine of $5,000.00, to run consecutively with the balance of any other sentence imposed for a prior conviction for any offense.") The provisions of Subsection (E)(4)(b) specifically disqualify a defendant previously convicted of DWI Fourth from receiving the benefits of suspension, probation, or parole and that the sentence for the subsequent conviction must be served consecutively to any other sentence. Therefore, the trial court's sentencing of Gage under Subsection (E)(4)(b) was the correct sentencing provision, and the sentence is not illegal for failing to suspend any portion thereof. To the extent, however, that the trial court failed to specifically articulate that Gage's ten-year sentence would be without benefit of suspension of sentence, probation or parole, the sentence was actually illegally lenient under Subsection (E)(4)(b). Failure to impose sentence under Subsection (E)(4)(b) is considered error patent because it would otherwise be an illegally lenient sentence. State v. Jones, supra, 938 So.2d at 1083. Thus, in accordance with La. R.S. 15:301.1(A), the 10-year sentence imposed in the present case will automatically be amended so that it is served without the benefits of suspension of sentence, probation, or parole. State v. Corbin, supra. Further we amend the sentence to provide that it run consecutively with the balance of any other sentence imposed for a prior conviction for any offense, whether a DWI offense or otherwise, in accordance with Subsection (E)(4)(b).
Regarding the bill of information, Gage claims that it was insufficient to give him notice of the harshness of a potential sentence without benefits. He also argues that the jury should have made a determination of the previous penalties imposed and whether he had previously received the benefits of a prior suspended sentence for the predicate DWI Fourth offense.
For the purpose of charging a defendant with multiple offense DWI, it is necessary to allege prior convictions because those prior convictions are elements of the offense which elevate the level of punishment. However, the fact that a defendant has previously received the benefits of suspension of sentence, probation, or parole from a prior DWI Fourth conviction is not an element of a subsequent DWI offense. Subsection (E)(4)(b) simply removes the benefits of suspension of sentence, probation, and parole because of Gage's prior DWI Fourth which is an established fact of prior conviction that becomes a sentencing consideration.
In State v. Hardeman, 04-760 (La.App. 1st Cir.2/18/05), 906 So.2d 616, 625-626, the First Circuit addressed this issue after defendant alleged it was error to impose *608 sentence under Subsection (E)(4)(b) without alleging those sentencing facts in the bill of information:
The defendant further argues that the bill of information failed to allege conviction of a prior fourth offense DWI, thereby depriving the defendant of notice and an opportunity to refute the grounds for a harsher sentence. This argument assumes that if the defendant had previously received the benefit of suspension of sentence and probation as a fourth offender, this fact was an element of the offense, rather than a sentencing consideration. After careful consideration of the issue, we are convinced that the fact that the defendant had previously received the benefit of suspension of sentence and probation as a fourth offender was a sentencing consideration and not an element of the instant offense.
Any fact (other than a prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt. Apprendi v. New Jersey, 530 U.S. 466, 476, 120 S.Ct. 2348, 2355, 147 L.Ed.2d 435 (2000); Jones v. United States, 526 U.S. 227, 243 n. 6, 119 S.Ct. 1215, 1224 n. 6, 143 L.Ed.2d 311 (1999). Elements of an offense must be charged in the indictment, submitted to a jury, and proven by the government beyond a reasonable doubt. Jones v. United States, 526 U.S. at 232, 119 S.Ct. at 1219. The statutory maximum, for Apprendi purposes, is the maximum sentence a judge may impose solely on the basis of the facts reflected in the verdict or admitted by the defendant. Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).
The rule of Apprendi made exception for prior convictions because they were the product of proceedings that afforded crucial procedural protections, particularly fair notice, the right to jury trial, and proof beyond a reasonable doubt. State v. Brown, 03-2788 (La.7/6/04), 879 So.2d 1276, 1290, [cert. denied, 543 U.S. 1177, 125 S.Ct. 1310, 161 L.Ed.2d 161]. The court in Brown held that, because juvenile adjudications were not established through a procedure guaranteeing a jury trial, they were not excepted from the rule of Apprendi. State v. Brown, supra, 879 So.2d at 1290.
In the instant case, the fact that the defendant had previously received the benefit of suspension of sentence and probation as a fourth offender was the product of proceedings that afforded fair notice, the right to a jury trial, and proof beyond a reasonable doubt. Accordingly, that fact was excepted from the rule of Apprendi.

The subject matter of LSA-R.S. 14:98(E)(4)(b) further guides our decision. LSA-R.S. 14:98(E)(4)(b) punishes recidivism. Recidivism is one of the most frequently found factors that affect sentencing. Almendarez-Torres v. United States, 523 U.S. 224, 241, 118 S.Ct. 1219, 1229, 140 L.Ed.2d 350 (1998). Additionally, the structure of LSA-R.S. 14:98 indicates that LSA-R.S. 14:98(E)(4)(b) sets forth an additional penalty, not a new crime. LSA-R.S. 14:98(E)(1)(a), LSA-R.S. 14:98(E)(4)(a), and LSA-R.S. 14:98(E)(4)(b) must be read together.
Thus, State v. Hardeman, supra, treats Subsection (E)(4)(b) as a recidivism statute and relies upon federal case law under Apprendi which allows the enhancement of sentences by prior convictions without requiring that proof of such be presented to the jury. Accordingly, Subsection (E)(4)(b) is not a separate offense requiring additional facts to be alleged in the *609 indictment; the holding of Apprendi was not violated; and trial counsel was not ineffective for failing to file a motion to quash the bill of information on this ground.
Defendant further contends that the imposed sentence is void because the trial court failed to wait the requisite three-day period between conviction and sentence without obtaining an express waiver as required by La.C.Cr.P. art. 873.
La.C.Cr.P. art. 873 provides:
If a defendant is convicted of a felony, at least three days shall elapse between conviction and sentence. If a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately.
Regardless of the lack of sentencing delay in this case, La. C.Cr.P. art. 921 provides that a judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused. State v. Seals, 95-305 (La.11/25/96), 684 So.2d 368, cert. denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997) involved a mandatory death sentence case in which the trial judge held no discretion in the term of years to be imposed. The court held that delay or no delay, the sentence the judge was required to impose would have been the same. Thus, no prejudice could possibly have resulted from the failure of the court to comply with the delay. See State v. Robert, 42,036, 42,037 (La.App.2d Cir.5/9/07), 956 So.2d 750.
Finally, defendant argues that his trial counsel should have objected to the trial court's inclusion in its charge to the jury of some of the sentencing provisions of La. R.S. 14:98(E)(1)(a) when Gage was ultimately sentenced under La. R.S. 14:98(E)(4)(a). This failure to object is cited as another example of ineffective assistance of counsel.
When a sentence for an offense contains "a mandatory legislative penalty with no judicial discretion," the trial court must instruct the jury on this penalty on request of the defendant and allow the defendant to argue the penalty to the jury. State v. Jackson, 450 So.2d 621, 633-634 (La.1984) (internal citations omitted); State v. McBroom, 27,027 (La.App.2d Cir. 5/10/95), 655 So.2d 705, 710, citing State v. Jackson, supra. Otherwise, if the sentence is not mandatory, the trial court has the discretion over whether to instruct the jury on the authorized penalty. Id.
This case did not involve a mandatory sentence. Nevertheless, the trial court included in the charge the portion of the sentencing language under Subsection (E)(1)(a) stating the sentencing range of ten to thirty years and the fine. This was necessary for an understanding of any sentence under Subsection (E)(4)(b). The court also read the sentence in Subsection (E)(1)(a) which states that "[s]ixty days of the sentence of imprisonment shall be imposed without benefit of probation, parole, or suspension," even though the actual sentence called for under Subsection (E)(4)(b) allows no benefit of probation, parole or suspension for any part of the imposed sentence.
We find no merit in Gage's argument that this reading of the "sixty day" provision of Subsection (E)(1)(a) was improper and therefore prejudicially led to his conviction. The main thrust of this jury charge clearly revealed the possibility of the harsh sentencing range of ten to thirty years. After the trial court elected to read that charge regarding the sentence, the *610 defendant could argue the harshness of that sentencing range in the hope of a verdict of a lesser included charge. Any slight inaccuracy caused by the reading of Subsection (E)(1)(a)'s sixty-day provision did not inform the jury that Gage could only be sentenced to a sixty-day period of actual jail time. The possibility of ten to thirty years was stated to the jury, and the conviction was reached in that light.
These assignments of error regarding the applicable sentencing provisions are without merit.

Conclusion
For the foregoing reasons, defendant's conviction is affirmed. Defendant's sentence is affirmed and amended.
AFFIRMED AS AMENDED.
NOTES
[1] Officer Jones also informed Gage of his rights under Miranda.
[2] Acts 2007, No. 227 amends and reenacts La. R.S. 14:98(A)(1)(e) which is not applicable in the case sub judice.
[3] Gage's further argument that a twelve-person jury was required in the case under La. C.Cr.P. art. 782 because of punishment with required confinement at hard labor is incorrect.