NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

KA 17-600

STATE OF LOUISIANA

VERSUS

MICHAEL KEES

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 16-976
HONORABLE KEITH RAYNE JULES COMEAUX, DISTRICT JUDGE

**********

CANDYCE G. PERRET
JUDGE

**********

Court composed of Sylvia R. Cooks, John D. Saunders, and Candyce G. Perret,
Judges.

AFFIRMED AND REMANDED WITH INSTRUCTIONS.

**Annette Fuller Roach**
**Louisiana Appellate Project**
**P. O. Box 1747**
**Lake Charles, LA 70602-1747**
**(337) 436-2900**
**COUNSEL FOR DEFENDANT APPELLANT:**
    **Michael Kees**

**Hon. M. Bofill Duhe**
**District Attorney**
**Robert Clauson Vines**
**Assistant District Attorney**
**W. Claire Howington**
**Assistant District Attorney**
**300 Iberia St., #200**
**New Iberia, LA 70560**
**(337) 369-4420**
**COUNSEL FOR PLAINTIFF APPELLEE:**
    **State of Louisiana**

**PERRET, Judge.**

Defendant, Michael Kees, was convicted of operating a vehicle while intoxicated, fourth offense, in violation of La.R.S. 14:98(A). Defendant was sentenced to fifteen years at hard labor, of which three years would be served without the benefit of parole, probation, or suspension of sentence, and Defendant would receive credit for time served. Defendant seeks review of his conviction by this court, alleging the state presented insufficient evidence to support his conviction and that Defendant had ineffective assistance of counsel. For the reasons that follow, we affirm Defendant's conviction and remand with instructions to the trial court.

### ISSUES FOR REVIEW

This court must decide:

1. whether the evidence introduced at the trial of this case, when viewed under the *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979) standard, was insufficient to prove, beyond a reasonable doubt, that Michael Kees was driving while under the influence of alcohol; and

2. whether trial counsel's representation of Michael Kees fell below the standard guaranteed by the Sixth Amendment because she allegedly failed to assure that the jury instructions given in this case were both correct and complete and that they properly instructed the jury as to the law necessary to return a just and lawful verdict.

### FACTS AND PROCEDURAL BACKGROUND

On June 29, 2016, Defendant was involved in a single vehicle accident in which he drove off the roadway and into a ditch. He was charged with one count of operating a vehicle while intoxicated, fourth offense, in violation of La.R.S. 14:98(A), one count of careless operation of a motor vehicle, in violation of

La.R.S. 32:58, and one count of operating a vehicle without a driver's license, in violation of La.R.S 32:52. He was subsequently found guilty of one count of operating a vehicle while intoxicated, fourth offense. At trial, the following testimony and documents were presented to the jury.

Chad Bordelon, a probation officer for the State of Louisiana, Department of Corrections, identified Defendant as one of his probationers. He testified that Defendant had been convicted of operating a vehicle while intoxicated, third offense, on May 3, 2013, for which Defendant was placed on probation for five years. At this time, the State also introduced into evidence certified copies of Defendant's two prior convictions for operating a vehicle while intoxicated and the conviction for the third offense: State's Exhibit 1, a 2005 conviction under Tangipahoa Docket No. 502193; State's Exhibit 2, a 2012 conviction under Lafayette Parish Docket number 11-7631; and the 2013 Iberia Parish conviction testified to by Officer Bordelon.

Jamie Miller, a deputy with the Lafayette Parish Sheriff's Office,[1] testified that, on June 29, 2016, at approximately 6:00 p.m., he was dispatched to a single vehicle crash off of Louisiana Highway 88. When he located the vehicle, Defendant was standing by the opened driver's side door of the vehicle, which was in the ditch. As Deputy Miller approached the vehicle, Defendant moved away from him to the other side of the vehicle. Defendant told Deputy Miller that he overestimated the curve in the road while driving and, because the road was wet, he lost control. However, Deputy Miller testified that the road was not wet. Defendant also did not have a driver's license. Defendant told Deputy Miller that

---

[1] At the time of the offense, Deputy Miller was employed by the Iberia Parish Sheriff's Office.

he forgot his driver's license and instead, produced a Louisiana Identification card. Deputy Miller stated there was a strong odor of cologne and beer coming from Defendant. He looked inside the vehicle while the door was open and smelled the same cologne and beer odor. Deputy Miller testified that he believed Defendant was under the influence of alcohol because, besides smelling the odor of alcohol, Defendant swayed when he walked and stood, and his speech was slurred. In fact, Deputy Miller first believed Defendant had a speech impediment because of his slurred speech and pronunciation of some words. Deputy Miller also stated there was no alcohol in the vehicle. Defendant was not asked to perform a field sobriety test at that time and Deputy Miller did not utilize his body camera while talking to Defendant.

Scott Verret, a trooper with the Louisiana State Police in Lafayette, arrived at the scene approximately twenty minutes after Deputy Miller and took over the investigation. Trooper Verret, an eighteen-year veteran in law enforcement, stated he has had extensive training in investigating driving under the influence incidences. Defendant told Trooper Verret that he lost control of the vehicle when he swerved to avoid a tire in the road. However, Trooper Verret did not find any tire in the roadway, or anywhere in the area. He stated that, as he spoke with Defendant, he could smell cologne and an odor of alcohol coming from Defendant's person. He testified Defendant walked off balance, his eyes were red and glassy, and his speech was slurred. At this point, believing he was investigating a driving under the influence case rather than a crash incident, he returned to his unit and turned on the unit's dash-cam.

Trooper Verret asked Defendant to walk the fog line at the side of the road, which Defendant did. He then attempted to do a horizontal gaze nystagmus test on

Defendant. Trooper Verret explained that a horizontal gaze nystagmus test requires the test-taker to follow a stimulus, such as a pen, while the officer looks for a "smooth pursuit" of the stimulus. An impaired driver's pursuit will not be smooth; instead, the driver's eyes will jerk while following the stimulus. However, after an abortive attempt, Defendant told Trooper Verret he did not want to do the test. At this point, Trooper Verret arrested Defendant for driving while intoxicated and put him into the back of his unit. The trooper read Defendant his *Miranda* rights at this time. Trooper Verret testified that he was unaware of Defendant's prior record and arrests before this time.

Trooper Verret transported Defendant to the Iberia Parish Sheriff's Office in New Iberia because there was an Intoxilyzer at that location. Trooper Verret explained that an Intoxilyzer instrument analyzes the amount of alcohol in the person's breath to give a definitive result on the person's blood alcohol level. Defendant refused to do the test. Trooper Verret also stated Defendant kept asking to go to the bathroom and that Defendant would alternate between being quiet and cooperative to being combative. Although Trooper Verret offered Defendant another opportunity to take the Intoxilyzer test, he again refused to take the test.

The State offered into evidence the DVD recording of Trooper Verret's dash-cam for the time period he attempted to get Defendant to perform a field sobriety test at the crash site. The recording shows Trooper Verret running his boot across the fog line to clear the line of anything that could trip Defendant. He then asked Defendant to walk down the line. Defendant appears to walk down the line without difficulty. The recording also shows Trooper Verret attempting to perform the horizontal gaze nystagmus. While it is difficult to discern whether Defendant swayed during this time, he did appear anxious and his words, which

4

were muted but could be heard, sound thick. Defendant told Trooper Verret he had not been drinking and that he was just recovering from pneumonia. Trooper Verret told Defendant that he could smell the alcohol. Trooper Verret then handcuffed Defendant and took him to the police unit. Once inside the unit, Trooper Verret and Defendant's conversation can be heard. Trooper Verret asked Defendant questions and Defendant answered. Defendant was cooperative during the conversation. Defendant can be heard asking Trooper Verret not to charge him with driving while intoxicated.

A jury trial commenced on January 30, 2017. The State severed the two misdemeanor charges above from trial, following which Defendant was found guilty of operating a vehicle while intoxicated, fourth offense. Defendant was sentenced on February 21, 2017, to fifteen years at hard labor, of which three years would be without the benefit of parole, probation, or suspension of sentence, and Defendant would receive credit for time served.

Defendant filed a "Motion for Reconsideration of Sentence" on March 13, 2017, wherein he alleged the sentence was excessive under the circumstances of his case. The motion was denied without a hearing.

Defendant has now perfected a timely appeal of his conviction.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by the court for errors patent on the face of the record. After reviewing the record, we find there are two errors patent.

First, the record does not indicate that the trial court imposed the mandatory $5000.00 fine required by La.R.S. 14:98.4(B), rendering Defendant's sentence illegally lenient. "However, this court will not consider an illegally lenient

5

sentence unless it is a raised error." *State v. Celestine*, 11-1403, p. 2 (La.App. 3 Cir. 5/30/12), 91 So.3d 573, 575; see also *State v. Jacobs*, 08-1068 (La.App. 3 Cir. 3/4/09), 6 So.3d 315, *writ denied*, 09-755 (La. 12/18/09), 23 So.3d 931.

Second, Defendant was advised at sentencing that he had two years within which to file an application for post-conviction relief. Louisiana Code of Criminal Procedure Article 930.8 provides that a defendant has two years after the conviction and sentence become final to seek post-conviction relief. Therefore, the trial court's advisement was insufficient, and the trial court is directed to inform Defendant of the provisions of La.Code Crim.P. art. 930.8 by sending written notice to Defendant within ten days of the rendition of this opinion and to file written proof in the record that Defendant received the notice. *State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163. We will now address Defendant's Assignments of Error.

## LAW AND DISCUSSION

Defendant designates two assignments of error on appeal. The first challenges the sufficiency of the evidence introduced at his trial, while the second asserts he received ineffective assistance of counsel.

### *Assignment of Error Number One—Sufficiency of the Evidence*

Defendant argues that the State failed to prove, beyond a reasonable doubt, that Defendant was guilty of operating a vehicle while intoxicated in violation of La.R.S. 14:98. An insufficient evidence claim is reviewed on appeal under the standard set forth by *Jackson*, 443 U.S. 307. "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a

6

reasonable doubt." *State v. Ellis*, 179 So.3d at 588, (quoting *Jackson*, 443 U.S. at 319).

In *State v. Williams,* 13-497, pp. 3-5 (La.App. 3 Cir. 11/6/13), 124 So.3d 1236, 1239-40, *writ denied,* 13-2774 (La. 5/16/14), 139 So.3d 1024, this court also discussed the standard of review for sufficiency of evidence, as follows:

> In *State v. Spears,* 05-964, p. 3 (La. 4/4/06), 929 So.2d 1219, 1222-23, the supreme court stated that:
>
> > [C]onstitutional law does not require the reviewing court to determine whether it believes the witnesses or whether it believes that the evidence establishes guilt beyond a reasonable doubt. *State v. Mussall,* 523 So.2d 1305, 1309 (La.1988). Rather, the fact finder is given much discretion in determinations of credibility and evidence, and the reviewing court will only impinge on this discretion to the extent necessary to guarantee the fundamental protection of due process of law.

The fact finder must be given discretion in weighing the witnesses' credibility. *Id.* Thus, other than insuring the sufficiency evaluation standard of *Jackson*, "the appellate court should not second-guess the credibility determination of the trier of fact," but defer to the credibility and evidentiary determinations of the jury. *State v. Lambert*, 97-64, p. 5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 727.

When applying the *Jackson* standard, the Louisiana Supreme Court "has found that '[w]hen a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by [defendant], that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a

reasonable doubt.'" *Ellis*, 179 So.3d at 588 (quoting *State v. Captville*, 448 So.2d 676, 680 (La.1984)).

Defendant argues that the State failed to prove, beyond a reasonable doubt, that Defendant was guilty of operating a vehicle while intoxicated. Defendant also asserts the State cannot prove that he was intoxicated at the time he drove the vehicle, and that the circumstantial evidence does not exclude Defendant's reasonable hypothesis of innocence as required by La.R.S. 15:438.

At the time of the offense, La.R.S. 14:98 provided:

> A. (1) The crime of operating a vehicle while intoxicated is the operating of any motor vehicle, aircraft, watercraft, vessel, or other means of conveyance when any of the following conditions exist:
>
> (a) The operator is under the influence of alcoholic beverages.
>
> (b) The operator's blood alcohol concentration is 0.08 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood.
>
> (c) The operator is under the influence of any controlled dangerous substance listed in Schedule I, II, III, IV, or V as set forth in R.S. 40:964.
>
> (d)(i) The operator is under the influence of a combination of alcohol and one or more drugs that are not controlled dangerous substances and that are legally obtainable with or without a prescription. . . .

In *State v. Kestle*, 07-1573, pp. 6-7 (La. 12/2/08), 996 So.2d 275, 279 (citations omitted), the supreme court discussed behavioral manifestation as an observable condition of intoxication:

> In *State v. Hightower*, 238 La. 876, 116 So.2d 699, 703 (1959), this court stated that "a person is intoxicated within the provisions of the statute when he does not have the normal use of his physical and mental faculties by reason of the use of alcoholic beverages (or narcotics), thus rendering such person incapable of operating an

8

automobile in a manner in which an ordinarily prudent and cautious man in full possession of his faculties, using reasonable care, would operate a motor vehicle under like conditions."

It has been widely recognized that intoxication, with its behavioral manifestations, is an observable condition about which a witness may testify. Behavioral manifestations, sufficient to support a charge of DWI, in the absence of a scientific test, are determined on a case by case basis. An officer's subjective opinion that a subject failed a field sobriety test may constitute sufficient evidence of intoxication to support a DWI conviction.

In the current case, Defendant argues that the physical manifestations of intoxication described by both Deputy Miller and Trooper Verret are not supported by the video recording. Defendant states the video did not show him swaying or stumbling, nor can the listener hear him slur his words. He asserts the video shows he followed directions when the trooper told him to walk the fog line and that he did so without difficulty. After Trooper Verret put Defendant into the car, he could be heard politely answering questions. Defendant notes there was no evidence submitted as to when the crash occurred or when Deputy Miller was dispatched to the scene. He argues that he could have left the scene of the accident and returned later; thus, there was no evidence that he drank alcohol prior to driving the vehicle, rather than after the vehicle ended up in the ditch. Therefore, he argues there was no evidence he was intoxicated while he was driving the vehicle.

Defendant argues his case is similar to *State v. St. Amant*, 504 So.2d 1094 (La.App. 5 Cir. 1987). In *St. Amant,* the arresting officer pulled over Ms. St. Amant for reasons other than a traffic violation. When she exited the vehicle, the officer observed that she was unsteady on her feet, appeared confused, slurred her

9

words, and smelled of alcohol. The officer took her to the police station where she underwent an Intoxilyzer test and did a videotaped field sobriety test. The result of the Intoxilyzer test was 0.18g percent blood/alcohol content. The officer also testified that Ms. St. Amant did not perform well on the field sobriety test because she was unsteady on her feet. Even though the trial court noted in the record that Ms. St. Amant had performed adequately on the field sobriety test contrary to the officer's opinion, it still found Ms. St. Amant guilty of driving while intoxicated, second offense.

On appeal, the fifth circuit ruled that the Intoxilyzer result was inadmissible because the proper foundation was not laid for its admissibility. Furthermore, the fifth circuit concluded the trial court was correct when it opined that Ms. St. Amant performed adequately on the videotaped sobriety test. The fifth circuit stated:

> Because we have concluded the intoximeter test result is inadmissible, defendant's conviction must turn on whether the State's evidence otherwise proved beyond a reasonable doubt that defendant was operating a motor vehicle while under the influence of alcoholic beverages. Apart from the intoximeter test, the other evidence offered on this issue was the videotaped field sobriety test and the arresting officer's testimony relating his sensory impressions.
>
> We conclude, as did the trial judge, that the defendant does not appear intoxicated on the videotape.
>
> The only remaining evidence is the arresting officer's statement that when he first detained her she smelled of alcohol, was unsteady on her feet and seemed confused. He also testified, however, that she was unsteady on her feet during the videotaped field sobriety test, but that was not perceptible to us. Accordingly, we conclude his testimony alone is insufficient to carry the State's burden of proof.

*Id.* at 1097-98.

Similarly, the fourth circuit in *State v. Loisel*, 01-2018 (La.App. 4 Cir. 3/6/02), 812 So.2d 822, reversed a DWI conviction finding the videotape did not support a finding that the defendant was intoxicated. In *Loisel*, there was no testimony given at trial. Instead, the State admitted the officer's report and a videotape. Mr. Loisel was pulled over after an officer witnessed him sitting in an intersection, blocking traffic. The officer witnessed Mr. Loisel light a cigarette and put a mint in his mouth. Regardless, the officer could still smell alcohol on his person. Mr. Loisel refused the finger to nose test and the walk and turn test, but agreed to perform the alphabet test, which the officer reported Mr. Loisel failed. Mr. Loisel also admitted to drinking. The officer's report stated Mr. Loisel smelled of alcohol, had slurred speech, and he checked off "unsure" under the "balance" section of the Uniform Field Sobriety Test form. *Id.* at 824. The court concluded the video tape showed Mr. Loisel had some trouble with the alphabet test, but did not appear to have trouble walking or standing, which was contrary to the officer's report. He actually stood and paced in front of the officer's vehicle for approximately twenty minutes. The court also found it was possible to understand everything Mr. Loisel said to the officer. The fifth circuit concluded, "Loisel's refusal to take some of the tests may have been reason enough for the arrest; however, the officer's statements in the police report (in comparison to the videotape) are legally insufficient to carry the State's burden of proof for the conviction." *Id.* at 829.

However, in *State v. Walker*, 05-875 (La.App. 4 Cir. 3/29/06), 930 So.2d 94, the fourth circuit discussed evidence admitted to prove Ms. Walker was driving under the influence: behavioral manifestation, videotaped observations of the accused, and taking or refusing testing for alcohol consumption. No trial

testimony was taken, but the State entered the police report and videotape made at the Belle Chasse Lockup into evidence. In *Walker*, Ms. Walker was stopped for speeding and driving erratically. The officer observed Ms. Walker pour some liquid out of the car window as she drove. When she stopped, she staggered a bit as she exited the vehicle. Although she produced her driver's license and registration, she had problems finding her insurance card, which was lying on her lap. She refused to do a field sobriety test. At the police station, she again refused to do a field sobriety test or take a chemical test for intoxication. During interrogation, Ms. Walker slouched in her chair, rubbed her eyes, and acted nervous. When asked if she had been drinking, she shrugged her shoulders but admitted she had left a bar before she was stopped. She was found guilty of operating a vehicle while intoxicated, first offense. She appealed the conviction, and argued that the video recording negated a finding that she was intoxicated at the time she was stopped.

The fourth circuit in *Walker* noted that the videotape did not discredit the information in the police report even though the tape by itself did not establish that Ms. Walker was intoxicated after she arrived at the station. Additionally, the court notes that the video was not taken when Walker was stopped, which is what the police report evidenced. Noting too that, unlike in *Loisel* and *St. Amant,* Ms. Walker refused to do any sobriety test, which was admissible as evidence of intoxication under La.R.S. 32:666. The fourth circuit determined there was sufficient evidence that she was intoxicated while operating her vehicle.

In the current case, both Deputy Miller and Trooper Verret testified that they could smell alcohol underneath the strong odor of cologne. They both stated that Defendant swayed and slurred his words. Deputy Miller testified that Defendant's

speech was so bad, he thought Defendant had a speech impediment. Both officers stated that Defendant's eyes were bloodshot. Although Defendant was able to walk the fog line, he began the horizontal gaze nystagmus test, but shortly thereafter refused to continue with the test. Defendant's speech was recorded during this time and sounds thick. While Defendant does not necessarily appear to be swaying on the video, it is also difficult to tell because of the direction Defendant stands while taking the nystagmus test. Not to mention Deputy Miller observed Defendant for approximately twenty minutes before Trooper Verret arrived and prior to Trooper Verret turning on the dash cam. Trooper Verret also observed Defendant prior to the dash cam being turned on. Therefore, both officers may have observed Defendant swaying and slurring his speech prior to the dash cam recording the incident. While Trooper Verret's interaction with Defendant shown on the video recording was very brief, the video does not necessarily discredit the officers' testimonies regarding Defendant's behavioral manifestations.

While there was no video recording of Defendant's behavior at the police station, Trooper Verret testified that Defendant needed to use the restroom several times, and was cooperative at times, but then was also combative, so much so that the trooper finally handcuffed Defendant to the wall to avoid a problem.

Additionally, Defendant asserts the State cannot prove he was intoxicated at the time he was operating his vehicle. On the other hand, the State argues that there was no indication that Defendant left the vehicle after it went into the ditch.

In the previously discussed cases, the defendants were stopped by officers while operating their vehicles. However, in this case, there are no witnesses that testified to Defendant operating his vehicle. Although Defendant admits to driving

the vehicle, the officers did not see him doing so. There is also no evidence in the record that other witnesses saw Defendant operating his vehicle. However, as can be seen on the video, cars continuously pass through the area where the crash occurred. The property owners became aware of the crash and can be heard on the video discussing their damaged mailbox and getting Defendant's insurance information from Trooper Verret. No alcohol containers were located in the vehicle. Accordingly, it was unlikely that Defendant drank after the crash, but before the officers arrived.

Additionally, according to the officers, Defendant's explanation of what caused him to swerve off the road and into the ditch changed. First, Defendant stated the road was wet, but then changed his story and asserted he swerved to avoid a tire in the road. However, the video recording verified that the roadway was not wet at the time, and Trooper Verret testified there was no tire in the road or anywhere in the area. Conflicting voluntary statements made to law enforcement officers can be indicative of a guilty mind. *State v. Wiley*, 03-884 (La.App. 5 Cir. 4/27/04), 880 So.2d 854, *writ denied*, 04-1298 (La. 10/29/04), 885 So.2d 585.

Considering the evidence in a light most favorable to the prosecution, this court finds that Defendant was intoxicated while operating a vehicle. Therefore, this court finds that the State met its burden of proving beyond a reasonable doubt that Defendant was intoxicated while operating a vehicle in violation of La.R.S. 14:98(A) and, therefore, Defendant's first assignment of error lacks merit.

### Assignment of Error Number Two—Ineffective Assistance of Counsel

On appeal, Defendant also argues that his trial defense counsel rendered ineffective performance for failure to object to incorrect and misleading jury instructions regarding several elements of the offense. Normally when a jury

instruction is not objected to, the erroneous instruction cannot be raised on appeal. La.Code Crim.P. art. 801(C). However, as noted in *State v. Collins*, 04-1443 (La.App. 4 Cir. 7/26/05), 910 So.2d 454, the claim may be raised under the auspices of an ineffective assistance of counsel claim. Regarding ineffective assistance, the fourth circuit stated:

> A claim of ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief, filed in the trial court where a full evidentiary hearing can be conducted, rather than direct appeal. However, it is well settled that when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. *State v. Peart*, 621 So.2d 780, 787 (La.1993); *State v. Young*, 99-1054 (La.App. 5 Cir. 2/16/00), 757 So.2d 797, 803.

*Id.* at 460-61. Furthermore, the court noted:

> A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the 1974 Louisiana Constitution. In assessing a claim of ineffectiveness, a two-pronged test is employed. The defendant must show 1) his attorney's performance was deficient, and 2) the deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show prejudice for purposes of ineffective assistance of counsel, the defendant must demonstrate that but for counsel's unprofessional conduct the outcome of the trial would have been different. Effective assistance of counsel does not mean errorless counsel or counsel who may be judged ineffective on mere hindsight. *State v. Young*, 757 So.2d at 803.

*Id.* at 461. The record currently before this court is sufficient to address Defendant's ineffective counsel claim.

First, Defendant argues that the trial court instructed the jury as to a necessary element of the offense that was impossible to prove because it did not exist in this case. Yet, without evidence of this element, the jury convicted

15

Defendant. Specifically, Defendant refers to the trial court's following instruction while discussing what elements the State must prove beyond a reasonable doubt to find Defendant guilty:

> The final element is intoxicated[sic]. The operator's blood alcohol concentration must be .08 or more by weight based on grams of alcohol per one hundred cubic centimeters of blood.

This element was not present in this case—Defendant never submitted to a blood alcohol test.

Following the reading of the instruction, the trial court dismissed the jury to deliberate. The trial court then asked the State and defense counsel if there were any objections to the instructions. Both the State and defense counsel answered negatively.

Defendant argues, in brief, that "[t]he jury was instructed to find an element which was not a basis for the charge . . . . Thus, had the jury followed the instruction given to them by the court, as they were instructed they were required to follow, they could not have found Appellant guilty as charged." However, the trial court had previously instructed the jury on all elements the State was required to prove by reading La.R.S. 14:98, as follows (emphasis added):

> Defendant is charged with driving while intoxicated, fourth offense. The crime of operating a vehicle while intoxicated **is the operating of any motor vehicle**, aircraft, watercraft, vessel, or other means of conveyance when any of the following conditions exist: **the operator is under the influence of alcoholic beverages**; or the operator's blood alcohol concentration is .08% or more by weight based on grams of alcohol per one hundred cubic centimeters or blood[.]

Therefore, the jury was in fact properly instructed on the required elements of the statute.

In *State v. Mathews*, 50,838, 50,839, (La.App. 2 Cir. 8/20/16), 200 So.3d 895, *writ denied,* 16-1678 (La. 6/6/17), 220 So.3d 752, the defendant alleged a jury instruction was erroneous because it added an element to the charge which was not proved. The second circuit addressed the issue for the reason that "[e]rrors that affect substantial rights of the accused are reviewable by the appellate court . . . to preserve the fundamental requirement of due process." *Id.* at 909. Citing *State v. Arvie*, 505 So.2d 44, 48 (La.1987), the second circuit stated that, "[t]o fall under the exception, the error must cast substantial doubt, on the reliability of the fact-finding process." *Id.* Although finding the incorrect instruction did not actually add an additional element to the offense, citing *State v. Hongo,* 96-2060, p. 5 (La. 12/02/97), 706 So.2d 419, 421, the second circuit stated that the invalid instruction was harmless "if the evidence is otherwise sufficient to support the jury's verdict and the jury would have reached the same result if it had never heard the erroneous instruction." *Id.* at 910.

In this assignment of error, the question is whether defense counsel's performance was defective because she failed to object to the instruction regarding the .08 percent blood/alcohol content requirement. Defendant argues that, had defense counsel objected to the erroneous instruction and argued for clarifying instructions, the jury may have found that the State failed to prove Defendant was intoxicated while driving the vehicle. While the instruction was erroneous since there was no alcohol or blood analysis done in this case, the jury was correctly informed of the elements required to be convicted under La.R.S. 14:98 because the court previously read the jury the entirety of the statute.

Defendant further argues that the trial court failed to instruct the jury that it was their responsibility to find that Defendant was a fourth offender in that he was

17

the person who entered pleas of guilty to the three prior offenses. This allegation, too, is without merit. The jury was offered sufficient documentation establishing Defendant's three prior offenses—certified copies of Defendant's prior convictions and testimony by Defendant's probation officer that Defendant was on probation for a third conviction of operating a vehicle while intoxicated. Logically then, they were aware they were deciding a fourth conviction. The trial court also instructed the jury regarding a fourth offense, specifically and at length that, if they did not find Defendant guilty of a fourth offense, the responsive verdicts in this case were guilty of operating a vehicle while intoxicated, third or second or first offense, or not guilty. Accordingly, the jury was made aware of the fact that there must have been sufficient evidence that Defendant was a fourth offender in this case for them to find him guilty of a fourth offense.

Lastly, Defendant asserts the trial court failed to instruct the jury that they must find that Defendant was intoxicated while he was in control of the vehicle. This assertion also lacks merit. First, as quoted above, the trial court read the required elements of La.R.S. 14:98 to the jury, which includes, "The crime of operating a vehicle while intoxicated **is the operating of any motor vehicle** . . . when . . . **the operator is under the influence of alcoholic beverages**[.]" (Emphasis added). The operation element is inherent in the very charge of driving while intoxicated. Additionally, during the State's closing arguments, it was emphasized that Defendant must have been intoxicated while he was driving: "It's circumstantial that given these facts that my witnesses testified to, we're asking you to conclude when you put them all together that the only reasonable explanation that explains all of this is that Mr. Kees was under the influence of alcohol when he drove that car[.]"

18

To believe that the jury could not draw the conclusion that Defendant must be intoxicated while operating the vehicle to be convicted of such would be for this court to find that the jury was devoid of the common intelligence and sense of duty that is properly credited to them. The Louisiana Supreme Court has recognized that "much credit should be accorded to the good sense and fairmindedness of jurors who have seen the evidence and heard the argument[s.]" *State v. Mitchell*, 94-2078, p. 11 (La. 5/21/96), 674 So.2d 250, 258, *cert. denied,* 519 U.S. 1043, 117 S.Ct. 614 (1996).

## CONCLUSION

For the foregoing reasons, we affirm the trial court's conviction. However, we further remand this case to the trial court with instructions to send written notice within ten (10) days of the rendition of this opinion, properly advising Defendant of his time to seek post-conviction relief, and to file written proof in the record that Defendant received the notice.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS.** THIS OPINION IS NOT DESIGNATED FOR PUBLICATION. RULE 2-16.3, UNIFORM RULES—COURTS OF APPEAL.